(No. 11608.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED BUCKMINSTER, Plaintiff in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. CRIMINAL LAW—*evidence of similar transactions admissible to show intent in conspiracy.* On a trial for conspiracy to obtain the property of another by means of the confidence game or by false pretenses, evidence that the same parties adopted the same tactics upon other occasions, although a completed transaction of the same character is not shown, is admissible for the purpose of showing guilty knowledge and intent.

2. SAME—*evidence of a defendant's association with criminal characters is not admissible.* Where a defendant is charged with conspiracy to obtain the property of another by deception, it is error to admit evidence of his association with criminal characters having a reputation for engaging in similar transactions but who are not connected with the transaction in controversy; but the error is not ground for reversal where the guilt of the defendant is clear.

3. SAME—*conspiracy in Illinois to do wrongful act in another State is punishable.* A conspiracy formed in Illinois to do an unlawful act is punishable without regard to whether the act is to be performed in Illinois or another State.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. ROBERT E. TURNEY, Judge, presiding.

BENJAMIN C. BACHRACH, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (GEORGE C. BLISS, of counsel,) for the People.

282 – 12

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment of the criminal court of Cook county convicting Fred Buckminster of conspiracy, and this writ of error has been sued out to reverse the judgment.

The indictment charged Buckminster, F. A. May and J. Miller with conspiring to obtain $500 in money and a check for $3000 from Martin Hupe by means of the confidence game in the first count, and in a second count by false pretenses. The evidence for the prosecution showed that Hupe was a farmer about seventy-one years old, living on his farm near Homewood, in Cook county. In May, 1915, an automobile containing four persons stopped in the road near his house and he went out and talked with the men. Buckminster was driving and Miller was one of the men in the car. Miller said he wanted to buy a farm, and after talking with Hupe about farms in the neighborhood proposed that Hupe should go with him to look at farms, offering to pay him $5 a day. A few days later Buckminster and Miller returned in the car and Hupe went with them and looked at various farms, for which he was paid $5. When they separated Miller said that there were a couple of farms in Indiana he wanted Hupe to look at, and he would be back in a few days for that purpose. Accordingly Miller and Buckminster returned in a few days and took Hupe with them to look at the Indiana farms. When they were a little west of East Chicago, in Indiana, Buckminster said there was something the matter with the car and he would have to take it to a garage. He drove to a garage in East Chicago, stopping on the way to let Miller and Hupe out at a saloon to get a drink. They went out on the street and met Buckminster, who said it would take an hour to fix the car. Then Miller proposed taking a walk. They passed a man on the street with a pile of money which he was counting, whom Miller thought he recognized. Miller ad-

dressed the man, asking if he was not the man who won $100,000 in St. Louis about a month ago. The stranger admitted that he was the man but stated the amount was only $80,000. They all then went into the side door of a two-story frame building and into a room where there were two chairs and a table. In an adjoining room there was a blackboard on the wall and a man standing near it, and in the corner a table at which was a cashier with a bell behind him, and when it rang the names of horses that won and did not win, and the amounts won, were called off. The wealthy stranger, whose name Hupe subsequently learned was May, went back and forth between the small room and the larger room, apparently making small bets, always winning and taking Miller and Hupe in on the winnings. When they had accumulated some $4000 in this way they all went into the larger room and made another bet, giving a check or memorandum to the cashier, the result of which was that their horse was announced to have won a sum amounting to $14,000. The cashier then said that it was necessary, before the payment of the money, that they should show that they were worth the amount of the check. Thereupon Hupe, Buckminster and May went to the bank in Homewood, where Hupe got $500 in cash and a cashier's check for $3000. They returned with the money to East Chicago, where they met Miller, and the $500 and the check were given to the cashier. It was still necessary for the cashier to see that the check was good, and the $14,000 was not paid over at that time, but the cashier promised that Hupe should get the money and get his check back again the next Tuesday. Miller, Buckminster and Hupe came back to Blue Island in a car, where Hupe got out and did not afterwards see either Buckminster, Miller or May. Realizing that he had been swindled he stopped payment on the $3000 check. The check was presented the next day to the Edgewater State Bank by Buckminster, and he received $2000 in cash and credit in the bank for $1000. He afterwards re-paid

to the bank $1500 of the amount of the check and Hupe lost the other $1500, besides the $500 cash.

Buckminster in his testimony denied that he was in the house in East Chicago where the swindle was effected or had any knowledge of what was done there. He admitted driving the car, as testified to by Hupe, but said that he was merely employed by Miller for that purpose. He said that he got the check the next day from one Mason and cashed it for Mason's accommodation, Mason telling him that Miller got the check in his real estate deal and Miller wanted some money right away; that he was going away and thought Buckminster could get it cashed for him. There were contradictions in other points between Hupe's testimony and Buckminster's which need not be detailed. The evidence for the prosecution was clearly amply sufficient to convict Buckminster if it was believed by the jury. Whether this evidence or that of defendant would be believed was a question for the jury to determine, and in our judgment they arrived at the proper conclusion.

The prosecution introduced evidence that Buckminster, Miller, May and others, about a month after the swindling of Hupe, performed a swindle almost precisely duplicating it upon C. O. Olson by which the latter was defrauded of $10,000. Evidence was also admitted, over the defendant's objection, as to transactions with Joseph Stein, a banker of Milwaukee avenue, Chicago, and Henry Gottschalk, of the Homewood State Bank. The evidence of these two witnesses was admissible for the purpose of showing the guilty knowledge and intention of the defendant. While they did not show in either case a completed transaction of the same character as that in which Hupe was involved, the facts proved tended to show a conspiracy against Stein and Gottschalk, respectively, and though the swindle failed of consummation in each case, yet the facts were competent to characterize the defendant's actions.

The defendant was cross-examined, over his objection, in regard to his acquaintance with Joseph Weil, called the "Yellow Kid," and his knowledge that Weil was a fake race-horse man and had been convicted and sent to the penitentiary for wire tapping or the fake race-horse game, and as to his acquaintance with one Strosnider and his knowledge that Strosnider had been in various penitentiaries and had "an international reputation as a 'con' man," and had "worked this 'con' game racket on Kirby and that he was found guilty and sentenced to the penitentiary." During the cross-examination of another witness a rogue's gallery picture of Weil was exhibited. Strosnider and Weil had not been involved in the transaction in controversy, and this cross-examination, as well as the statements of the State's attorney, in his argument, in regard to Buckminster's association with these men, was improper and ought not to have been allowed. The error in permitting the same would have required a reversal of the judgment had not the evidence so completely and thoroughly established the defendant's guilt. Without regard, however, to these circumstances, a verdict finding the defendant not guilty could not have been properly rendered on the evidence. The conduct of the State's attorney showed a lack of appreciation of professional propriety and official duty and is to be condemned, though in view of the record in this case the judgment will not be reversed because of it.

It is earnestly contended that the indictment does not support the evidence, because the conspiracy proved had for its object the obtaining of money and property in the State of Indiana and not in the State of Illinois. The position of the plaintiff in error is that a conspiracy formed in this State for the doing of wrongful acts in another State is not punishable under the statute of Illinois. The statute is not so restricted. It punishes the act of conspiring to do certain wrongful acts without regard to where such wrongful acts are to be done. The crime with which the plaintiff

in error was charged was conspiracy to obtain the money and property of Martin Hupe by false pretenses and by means of the confidence game. Whether that object was ever accomplished or where it was to be accomplished are questions that are immaterial to the guilt of the plaintiff in error. If the conspiracy was formed the plaintiff in error was guilty wherever might be the field of operation.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*