## ABBATE ет аl. *v.* UNITED STATES.

No. 7.   Argued October 22, 1958.—Decided March 30, 1959.

*Charles A. Bellows* argued the cause and filed a brief for petitioners.

*Leonard B. Sand* argued the cause for the United States. With him on. the brief were *Solicitor General Rankin, Assistant Attorney General Anderson, Beatrice Rosenberg* and *Carl H. Imlay.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

During a strike against the Southern Bell Telephone and Telegraph Company, the petitioners and one McLeod were solicited in Chicago, Illinois, by a union official, Shelby, to dynamite facilities of the telephone company located in the States of Mississippi, Tennessee, and Louisiana. The four men met in Chicago where Shelby gave the petitioners and McLeod the plans of the facilities to

be dynamited and instructed them as to the method to be used. After Shelby left Chicago the petitioners told McLeod that they would not go through with the plan. McLeod, however, obtained dynamite and went to Mississippi to destroy telephone company facilities located there. The petitioners thereupon disclosed the plot to the telephone company and the Chicago police.

The petitioners, with Shelby and McLeod, were subsequently indicted by the State of Illinois for violating an Illinois statute making it a crime to conspire to injure or destroy the property of another.[1] The indictment describes the property as "communication facilities belonging to the Southern Bell Telephone & Telegraph Company" and "belonging to the American Telephone and Telegraph Company." The petitioners entered pleas of guilty to the indictment and were each sentenced to three months' imprisonment.

Thereafter indictments were returned in the United States District Court for the Southern District of Mississippi against the petitioners and Shelby, and also against one Perry who pointed out to McLeod the property to be dynamited. This indictment does not refer to the facilities as belonging to the telephone companies, but charges the offense of violating 18 U. S. C. § 371[2] by conspiring

---

[1] 38 Smith-Hurd Ill. Stat. Ann. (1957 Supp.) § 139 provides in pertinent part: "If any two or more persons conspire or agree together . . . with the fraudulent or malicious intent wrongfully and wickedly to injure the . . . property of another . . . they shall be deemed guilty of a conspiracy . . . ." The statute applies to conspiracies within Illinois to destroy property outside the State. See *People* v. *Buckminster*, 282 Ill. 177, 118 N. E. 497.

[2] 18 U. S. C. § 371 provides in pertinent part: "If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

to destroy, contrary to 18 U. S. C. § 1362,[3] "certain works, property and material known as coaxial repeater stations and micro-wave towers . . . located in the States of Mississippi, Tennessee and Louisiana . . . which were essential and integral parts of systems and means of communication operated and controlled by the United States." McLeod confessed to his part in the conspiracy and testified on the federal trial to petitioners' acts of participation in the conspiracy. These same acts were the basis of the Illinois convictions. The Government also introduced proof that the Strategic Air Command, the Civil Aeronautics Administration, the Navy and other federal agencies have the exclusive use of some of the circuits within the coaxial cables carried by the repeater stations and micro-wave towers that were to be destroyed. The federal jury found the four defendants guilty as charged. On appeal the Fifth Circuit Court of Appeals reversed the convictions of Shelby and Perry for error in the admission of evidence, but affirmed the convictions of the petitioners, 247 F. 2d 410. We granted certiorari limited to consideration of the claim that the federal prosecutions, based on the same acts as were the prior state convictions, placed petitioners twice in jeopardy contrary to the Fifth Amendment, 355 U. S. 902.

In *Bartkus* v. *Illinois, ante,* p. 121, also decided today, the order of the prosecutions was the reverse of the order in this case. Here the federal prosecution came after the Illinois convictions. Thus this case squarely raises the question whether a federal prosecution of defendants already prosecuted for the same acts by a State subjects

---

[3] The relevant part of 18 U. S. C. § 1362 is as follows: "Whoever willfully or maliciously injures or destroys any of the . . . property . . . of any . . . telephone, or cable, line, station, or system, or other means of communication, operated or controlled by the United States . . . ." is guilty of a crime.

those defendants "for the same offense to be twice put in jeopardy of life or limb" in violation of the Fifth Amendment.[4]

We do not write on a clean slate in deciding this question. As early as 1820 in *Houston* v. *Moore,* 5 Wheat. 1, it was recognized that this issue would arise from the concurrent application of state and federal laws.[5]   During the following three decades a number of state courts reached differing conclusions as to whether a state prosecution would bar a subsequent federal prosecution of the same person for the same acts.[6]   Against this background this Court thoroughly considered the question in three cases between 1847 and 1852. In *Fox* v. *Ohio,* 5 How. 410, the petitioner had been convicted of passing a counterfeit coin of the United States within the State of Ohio in violation of a state statute.  She contended that the Fifth Amendment prohibited successive state and federal prosecutions for the same acts, and therefore that a prosecution under the Ohio statute would prevent federal authorities from prosecuting the same act under the federal counterfeiting laws.  Thus, the argument continued, the Court should declare the Ohio statute unconstitutional under the

---

[4] The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."   The circumstances of this case do not require us to consider the suggestion in the Government's brief that "no state prosecution can preclude the federal government from enforcing federal law."   For example, there is nothing in this record to indicate any federal participation in the Illinois prosecution.

[5] Justice Johnson, in another case at the same Term, recognized the related problem of the scope to be given the plea of *autrefois acquit* when based on an acquittal by the courts of another country. *United States* v. *Furlong,* 5 Wheat. 184, 197.

[6] Compare, *e. g., Mattison* v. *State,* 3 Mo. *421, and *Hendrick* v. *Commonwealth,* 5 Leigh (Va.) 707, with *e. g., State* v. *Randall,* 2 Aikens (Vt.) 89, and *Harlan* v. *People,* 1 Douglass' Rep. (Mich.) 207.

Supremacy Clause in order to preserve the effectiveness of federal law enforcement. *Houston* v. *Moore* and some of the leading state authorities bearing on whether the Fifth Amendment applied to successive state and federal prosecutions were argued to the Court. All members of the Court agreed that the Fifth Amendment would not prohibit a federal prosecution even though based on the same act of passing the counterfeit coin that resulted in the state prosecution. There was a division, however, as to what disposition of the case was required by this conclusion. The majority reasoned that since the Ohio prosecution would not render the Federal Government powerless to enforce its counterfeit laws there was no basis for declaring the Ohio statute unconstitutional under the Supremacy Clause. Mr. Justice McLean, dissenting, thought that since "the punishment under the State law would be no bar to a prosecution under the law of Congress," 5 How., at 439, this undesirable result should be avoided by declaring the state statute unconstitutional, for, he said, "Nothing can be more repugnant . . . than two punishments for the same act," *id.*, at 440. Three years later, in *United States* v. *Marigold*, 9 How. 560, a unanimous Court affirmed a conviction under the federal counterfeiting statute that was discussed in *Fox*. The Court, in holding that a state and a federal statute could both apply to the same conduct, accepted the conclusion of *Fox* that "the same act might . . . constitute an offence against both the State and Federal governments, and might draw to its commission the penalties denounced by either . . . ." 9 How., at 569.

The third case, *Moore* v. *Illinois*, 14 How. 13, gave clear expression to the emerging principle that the Fifth Amendment did not apply to a federal prosecution subsequent to a state prosecution of the same person for the same acts. That case involved a conviction of Moore

under an Illinois statute for harboring an escaped slave. A federal statute outlawed the same act as an interference with the rights of the owner of the slave. Moore urged that the Illinois statute was void "as it subjects the delinquent to a double punishment for a single offence," 14 How., at 19. The Court rejected this argument, saying:

> "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. . . . That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other; consequently, this court has decided, in the case of Fox *v*. The State of Ohio, . . . that a State may punish the offence of uttering or passing false coin, as a cheat or fraud practised on its citizens; and, in the case of the United States *v*. Marigold, . . . that Congress, in the proper exercise of its authority, may punish the same act as an offence against the United States." 14 How., at 20.

Justice McLean again dissented on the ground of his dissent in *Fox*, namely, that the state law should be declared invalid for the very reason that "the conviction and punishment under the State law would be no bar to a prosecution under the law of Congress." *Id.*, at 21.

The reasoning of the Court in these three cases was subsequently accepted by this Court, in dictum, in the follow-

ing cases: *United States* v. *Cruikshank,* 92 U. S. 542, 550; *Coleman* v. *Tennessee,* 97 U. S. 509, 518; *Ex parte Siebold,* 100 U. S. 371, 389; *United States* v. *Arjona,* 120 U. S. 479, 487; *Cross* v. *North Carolina,* 132 U. S. 131, 139; *In re Loney,* 134 U. S. 372, 375; *Pettibone* v. *United States,* 148 U. S. 197, 209; *Crossley* v. *California,* 168 U. S. 640, 641; *Sexton* v. *California,* 189 U. S. 319, 322–323; *Matter of Heff,* 197 U. S. 488, 507; *Grafton* v. *United States,* 206 U. S. 333, 353–354; *Southern R. Co.* v. *Railroad Comm'n of Indiana,* 236 U. S. 439, 445; and *McKelvey* v. *United States,* 260 U. S. 353, 358–359. Typical of the statements adopting the principle is that of Chief Justice Taney, on circuit, in *United States* v. *Amy,* 24 Fed. Cas. No. 14,445 (C. C. D. Va. 1859), at p. 811, that "from the nature of our government, the same act may be an offence against the laws of the United States and also of a state, and be punishable in both."

Culminating this development was *United States* v. *Lanza,* 260 U. S. 377, where the issue was directly presented to this Court. Lanza was convicted by the State of Washington for "manufacturing, transporting, and having in possession" a quantity of liquor in violation of a state statute. He was subsequently convicted in a Federal District Court of violating the Volstead Act, 41 Stat. 305, for performing the same acts with regard to the same liquor. The Court held that the prior state conviction did not bar the federal prosecution. It pointed out that the State could constitutionally make Lanza's acts criminal under its original powers reserved by the Tenth Amendment, and the Federal Government could constitutionally prohibit the acts under the Eighteenth Amendment. Thus this case presented the situation hypothesized in *Fox* v. *Ohio* and other early cases; two sovereigns had, within their constitutional authority, prohibited the same acts, and each was punishing a breach of its pro-

hibition. A unanimous Court, in an opinion by Chief Justice Taft, held:

> "We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
>
> "It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, . . . and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority." 260 U. S., at 382.

The *Lanza* principle has been accepted without question in *Hebert* v. *Louisiana,* 272 U. S. 312, also a Volstead Act case, and in the following cases in this Court arising under other statutes: *Westfall* v. *United States,* 274 U. S. 256, 258; *Puerto Rico* v. *The Shell Co.,* 302 U. S. 253, 264–266; *Jerome* v. *United States,* 318 U. S. 101, 105; *Screws* v. *United States,* 325 U. S. 91, 108. And see *California* v. *Zook,* 336 U. S. 725, 752–753, 758 (dissenting opinion). Similarly, *Lanza* has been considered in many cases in the Courts of Appeals to have established the general principle that a federal prosecution is not barred by a prior state prosecution of the same person for the same acts.[7]

---

[7] See, *e. g., Rios* v. *United States,* 256 F. 2d 173 (C. A. 9th Cir. 1958); *Smith* v. *United States,* 243 F. 2d 877 (C. A. 6th Cir. 1957); *Jolley* v. *United States,* 232 F. 2d 83 (C. A. 5th Cir. 1956); *United States* v. *Levine,* 129 F. 2d 745 (C. A. 2d Cir. 1942).

Petitioner asks us to overrule *Lanza*. We decline to do so. No consideration or persuasive reason not presented to the Court in the prior cases is advanced why we should depart from its firmly established principle. On the contrary, undesirable consequences would follow if *Lanza* were overruled. The basic dilemma was recognized over a century ago in *Fox* v. *Ohio*. As was there pointed out, if the States are free to prosecute criminal acts violating their laws, and the resultant state prosecutions bar federal prosecutions based on the same acts, federal law enforcement must necessarily be hindered. For example, the petitioners in this case insist that their Illinois convictions resulting in three months' prison sentences should bar this federal prosecution which could result in a sentence of up to five years. Such a disparity will very often arise when, as in this case, the defendants' acts impinge more seriously on a federal interest than on a state interest. But no one would suggest that, in order to maintain the effectiveness of federal law enforcement, it is desirable completely to displace state power to prosecute crimes based on acts which might also violate federal law. This would bring about a marked change in the distribution of powers to administer criminal justice, for the States under our federal system have the principal responsibility for defining and prosecuting crimes. See *Screws* v. *United States*, 325 U. S. 91, 109; *Jerome* v. *United States*, 318 U. S. 101, 104–105. Thus, unless the federal authorities could somehow insure that there would be no state prosecutions for particular acts that also constitute federal offenses, the efficiency of federal law enforcement must suffer if the Double Jeopardy Clause prevents successive state and federal prosecutions. Needless to say, it would be highly impractical for the federal authorities to attempt to keep informed of all state prosecutions which might bear on federal offenses.

The conclusion is therefore compelled that the prior Illinois conviction of the petitioners did not bar the instant federal prosecution.

*Affirmed.*

By MR. JUSTICE BRENNAN.

The Government, in its brief and on oral argument in this case, urged that the judgment of the Court of Appeals should be affirmed on an alternative ground to that upon which the Court rests the decision. The Government argued that it was unnecessary to delimit the application of the Double Jeopardy Clause of the Fifth Amendment to successive state and federal prosecutions of the same acts beyond holding that the clause does not apply when those prosecutions, as in this case, are under statutes which require different evidence for a conviction and which protect different interests. The contention is that in this case additional evidence is necessary to convict under the federal statute, namely, proof that federal property was knowingly to be destroyed, and that the two statutes are designed to protect different interests, the state statute to protect "the sanctity of privately-owned property" and the federal statute to prevent injury to "means of communication, operated or controlled by the United States." The gist of the argument is that two prosecutions are not "for the same offense" within the meaning of the Fifth Amendment when they are based upon the violation of two statutes designed to vindicate different governmental interests and requiring different evidence to support convictions. Although the Court considered that it was unnecessary to discuss this suggested ground for decision, I consider its implications to be so disturbing as to require comment.[1] I cannot escape

---

[1] "It cannot be suggested that in cases where the author is the mere instrument of the Court he must forego expression of his own con-

the fact that this reasoning would apply equally if each of two successive *federal* prosecutions based on the same acts was brought under a different *federal* statute, and each statute was designed to protect a different federal interest. Indeed, the Government supports its argument by citing *Blockburger* v. *United States,* 284 U. S. 299; *Gore* v. *United States,* 357 U. S. 386; and *Pinkerton* v. *United States,* 328 U. S. 640, cases which involved only federal prosecutions, and *Hoag* v. *New Jersey,* 356 U. S. 464, which involved successive prosecutions by the same State. The argument then obviously is that the mere fact that there are two statutes which vindicate different interests and require different evidence of itself means that the Fifth Amendment does not prohibit successive prosecutions of the same acts under the respective statutes.

However, whatever the case under the Fourteenth Amendment as to successive state prosecutions, *Hoag* v. *New Jersey, supra,* or under the Fifth Amendment as to consecutive federal sentences imposed upon one trial, *e. g., Gore* v. *United States, supra,* I think it clear that successive federal prosecutions of the same person based on the same acts are prohibited by the Fifth Amendment even though brought under federal statutes requiring different evidence and protecting different federal interests. It is true that this Court has said: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U. S. 299, 304. But, so far as appears, neither this "same evi-

victions." *Wheeling Steel Corp.* v. *Glander,* 337 U. S. 562, 576 (separate opinion). See also *Helvering* v. *Davis,* 301 U. S. 619, 639–640.

dence" test nor a "separate interests" test has been sanctioned by this Court under the Fifth Amendment except in cases in which consecutive sentences were imposed on conviction of several offenses at one trial.[2] The accused, although punished separately and cumulatively for various aspects of a single transaction, is subject to only one prosecution and one trial. If the Government attempted multiple prosecutions of the same offenses, an entirely different constitutional issue would be presented, cf. *Hoag* v. *New Jersey,* 356 U. S., at 467. The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to mar-

---

[2] *Gavieres* v. *United States,* 220 U. S. 338, upheld a prosecution for insulting a public officer despite a prior prosecution for indecent behavior in public based on essentially the same acts. However, that decision was an interpretation of a congressional statute against double jeopardy applicable to the Philippine Islands, a territory "with long-established legal procedures that were alien to the common law." *Green* v. *United States,* 355 U. S. 184, 197. It has not been considered an authoritative interpretation of the constitutional provision. *Green* v. *United States, supra;* see *Hoag* v. *New Jersey,* 356 U. S. 464, 478, n. 3 (dissenting opinion). *Flemister* v. *United States,* 207 U. S. 372, decided under the same statute, involved two prosecutions of two different assaults on two police officers at two different times, although in "one continuing attempt to defy the law." *Burton* v. *United States,* 202 U. S. 344, was decided on a demurrer, the Court holding that the pleadings did not necessarily show that a count in a second indictment alleging the receipt of a bribe from a corporation charged the same offense as a count in a prior indictment alleging the receipt of a bribe from a named person who was an officer of the corporation. In *United States* v. *Adams,* 281 U. S. 202, the defendant had attempted to conceal an embezzlement by making false entries in bank books and, at a later date, by falsifying a report. A federal statute prohibited both such falsifications. Although both falsifications were attempts to conceal the same embezzlement, the statute outlawed the falsifications themselves, and thus the Court held that since they were made at different times and in different circumstances each could be prosecuted separately.

shal the resources and energies necessary for his defense
more than once for the same alleged criminal acts. "The
underlying idea . . . is that the State with all its re-
sources and power should not be allowed to make repeated
attempts to convict an individual for an alleged offense,
thereby subjecting him to embarrassment, expense and
ordeal and compelling him to live in a continuing state
of anxiety and insecurity . . . ." *Green* v. *United States,*
355 U. S. 184, 187. In short, "The prohibition is not
against being twice punished, but against being twice put
in jeopardy. . . ." *United States* v. *Ball,* 163 U. S. 662,
669.

Obviously separate prosecutions of the same criminal
conduct can be far more effectively used by a prosecutor
to harass an accused than can the imposition of consecu-
tive sentences for various aspects of that conduct. It is
always within the discretion of the trial judge whether to
impose consecutive or concurrent sentences, whereas,
unless the Fifth Amendment applies, it would be solely
within the prosecutor's discretion to bring successive
prosecutions based on the same acts, thereby requiring the
accused to defend himself more than once. Furthermore,
separate prosecutions, unlike multiple punishments based
on one trial, raise the possibility of an accused acquitted
by one jury being subsequently convicted by another for
essentially the same conduct.[3] See *Hoag* v. *New Jersey,*
*supra;* cf. *Ciucci* v. *Illinois,* 356 U. S. 571. Thus to per-

---

[3] The Double Jeopardy Clause of the Fifth Amendment applies in
the same manner to a prosecution following a prior conviction as
it does to a prosecution following a prior acquittal. See *Ex parte
Lange,* 18 Wall. 163, 169, 172; *United States* v. *Ball,* 163 U. S.
662, 669. This is consistent with the fact that, although *autrefois
acquit* and *autrefois convict* were separate pleas in bar in the English
law, they have historically been given the same scope. See 4 Black-
stone Commentaries *335–336; 2 Hawkins, Pleas of the Crown (8th
ed. 1824), pp. 515–529.

mit the Government statutorily to multiply the number of offenses resulting from the same acts, and to allow successive prosecutions of the several offenses, rather than merely the imposition of consecutive sentences after one trial of those offenses, would enable the Government to "wear the accused out by a multitude of cases with accumulated trials." *Palko* v. *Connecticut,* 302 U. S. 319, 328. Repetitive harassment in such a manner goes to the heart of the Fifth Amendment protection.[4] This protection cannot be thwarted either by the "same evidence" test or because the conduct offends different federal statutes protecting different federal interests. The prime consideration is the protection of the accused from the harassment of successive prosecutions, and not the justification for or policy behind the statutes violated by the accused. If the same acts violate different federal statutes protecting separate federal interests those interests can be adequately protected at a single trial by the imposition of separate sentences for each statute violated. See, *e. g., Bell* v. *United States,* 349 U. S. 81, 82–83; *Gore* v. *United States,* 357 U. S. 386.

---

[4] The doctrine of collateral estoppel may not provide adequate protection. Of course, it will be of no help to an accused who has been previously convicted. But even if he has previously been acquitted, the doctrine may be of little help because in many cases it cannot be ascertained whether the controlling factual issues in the second prosecution were necessarily resolved in the prior trial. See *Hoag* v. *New Jersey,* 356 U. S. 464, 471–472; *United States* v. *Dockery,* 49 F. Supp. 907; *United States* v. *Halbrook,* 36 F. Supp. 345. Furthermore, the protection of an essentially procedural concept such as collateral estoppel, see *Hoag* v. *New Jersey, supra,* at 471, is less substantial than the constitutional protection of the Double Jeopardy Clause. For example, a second trial that placed the accused in double jeopardy could be collaterally attacked, whereas query whether the failure to apply collateral estoppel could be challenged by a post-conviction motion for relief. See *Sunal* v. *Large,* 332 U. S. 174, 178–179.

The holding of the Court in *In re Nielsen,* 131 U. S. 176, establishes the governing principle. The defendant in that case, a Mormon with more than one wife, had been convicted of violating a congressional statute, applicable to the territory of Utah, which prohibited males from cohabiting with more than one woman. Subsequently he was prosecuted and convicted of adultery in violation of another congressional statute, the second prosecution being based on the same acts as the prior conviction. Despite the fact that it was necessary to prove a fact in the second prosecution not necessary for the first conviction, *i. e.,* that the defendant was married to another woman, and that a different federal interest was protected by each statute, the Court held that the second prosecution unconstitutionally put the defendant twice in jeopardy for the same offense.

In short, though the Court in *Gore* has found no violence to the guarantee against double jeopardy when the same acts are made to do service for several convictions *at one trial,* I think not mere violence to, but virtual extinction of, the guarantee results if the Federal Government may try people over and over again for the same criminal conduct just because each trial is based on a different federal statute protecting a separate federal interest.

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS concur, dissenting.

Petitioners, Abbate and Falcone, were convicted in an Illinois State Court of conspiracy to blow up certain property located in Mississippi and adjoining States. After receiving prison sentences in Illinois they were indicted and convicted of the same conspiracy in the Federal District Court of Mississippi and again sentenced to prison. The Court now affirms their second sentences over the contention that the federal conviction violates the double jeopardy provision of the Fifth Amendment.

In support of its affirmance, the Court points to *United States v. Lanza,* 260 U. S. 377.   In that case, this Court sustained Lanza's conviction for handling liquor contrary to federal law, after Lanza had been convicted under state law of handling the same liquor at the same time and place.   Some writers have explained *Lanza* as justified by the broad language of the Prohibition Amendment which was then in effect and which gave the States and the Federal Government concurrent power to control liquor traffic.[1]   The Court's opinion, in *Lanza,* however, seemed rather to rely on dicta in a number of past cases in this Court.   These had assumed that identical conduct of an accused might be prosecuted twice, once by a State and once by the Federal Government, because the "offense" punished by each is in some, meaningful, sense different.   The legal logic used to prove one thing to be two is too subtle for me to grasp.   See, generally, *Bartkus v. Illinois, ante,* p. 150 (dissenting opinion).[2]

---

[1] U. S. Const., Amend. XVIII.   See, *e. g.,* Note 55, Col. L. Rev. 83, 89, n. 38.   *Lanza* is severely criticized in Grant, The *Lanza* Rule of Successive Prosecutions, 32 Col. L. Rev. 1309; Grant, Successive Prosecutions by State and Nation: Common Law and British Empire Comparisons, 4 U. C. L. A. L. Rev. 1.

[2] The Court today seems to rely on the argument, also made in *Lanza,* 260 U. S., at 385, that failure to allow federal prosecutions after state trials might endanger federal law.   States, the argument runs, might establish minor punishments for conduct which violates United States statutes.   Criminals could then plead guilty in state courts and be safe from federal justice.   Whatever the merits of the argument in the context of the Eighteenth Amendment, it can have no validity here.   As we pointed out in *Bartkus v. Illinois, ante,* p. 150 (dissenting opinion), if Congress has power to make certain conduct a federal crime, it also has power to protect the national interest.   It can take exclusive jurisdiction over the crime or, if it wishes to allow the States concurrent power, it can define the offense and set minimum penalties which would be applicable in both state and federal courts.   In addition, should the state trial prove to be a

I am also not convinced that a State and the Nation can be considered two wholly separate sovereignties. for the purpose of allowing them to do together what, generally, neither can do separately.[3]  In the first place, I cannot conceive that our States are more distinct from the Federal Government than are foreign nations from each other.[4]  And it has been recognized that most free countries have accepted a prior conviction elsewhere as a bar to a second trial in their jurisdiction.[5]  In the second place, I believe the Bill of Rights' safeguard against double jeopardy was intended to establish a broad national policy against federal courts trying or punishing a man a second time after acquittal or conviction in any court.  It is just as much an affront to human dignity and just as dangerous to human freedom for a man to be punished twice for the same offense, once by a State and once by the United States, as it would be for one of these two Governments to throw him in prison twice for the offense.  Perhaps a belief that this is true was responsible for the fact that a proposed amendment to the Double Jeopardy Clause was rejected in our First Congress while the Bill of Rights was being considered.  If that amendment had been

sham, it might be that no jeopardy could be shown and that a subsequent federal trial would be constitutional.  See, e. g., *Edwards* v. *Commonwealth*, 233 Ky. 356, 25 S. W. 2d 746.  Cf. *United States* v. *Mason*, 213 U. S. 115, 125.  It therefore appears that federal laws can easily be safeguarded without requiring defendants to undergo double prosecutions.

[3] Almost all of the States have constitutional provisions similar to the Double Jeopardy Clause of the Federal Constitution.  See *Brock* v. *North Carolina*, 344 U. S. 424, 429, 435 (dissenting opinion).

[4] Cf. *Testa* v. *Katt*, 330 U. S. 386.

[5] See Grant, The *Lanza* Rule of Successive Prosecutions, 32 Col. L. Rev. 1309; Grant, Successive Prosecutions by State and Nation: Common Law and British Empire Comparisons, 4 U. C. L. A. L. Rev. 1.

adopted the Clause apparently would have barred double prosecutions for "the same offense" only if brought under "any law of the United States." 1 Annals of Cong., 753 (1789).[6] I fear that this limitation on the scope of the Double Jeopardy Clause, which Congress refused to accept, is about to be firmly established as the constitutional rule by the Court's holding in this case and in *Bartkus* v. *Illinois, ante,* p. 121.

I would reverse both convictions.

---

[6] At the time the amendment was offered the Double Jeopardy Clause under discussion read: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." 1 Annals of Cong., 434 (1789). If the amendment had passed the clause would have read: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence by any law of the United States." *Id.,* at 753.