### UNITED STATES of America
### v.
### J. A. McMAHON and A. N. Hill.
### Crim. No. 71–H–260.

United States District Court,
S. D. Texas,
Houston Division.

Nov. 12, 1971.

Anthony J. P. Farris, U. S. Atty., James R. Gough and Carl Walker, Jr., Asst. U. S. Attys., Houston, Tex., for the United States.

Haynes & Fullenweider, Michael Ramsey, Houston, Tex., for defendants.

MEMORANDUM AND ORDER:

SEALS, District Judge.

Defendants, police officers in Houston, Texas, have been indicted for interfering, under color of State law, with the civil rights of Bobby Joe Conner, in violation of 18 U.S.C. § 242.[1]  Conner

---

1. "Whoever, under color of any law, statute, ordinance regulation, or custom, will-

fully subjects any inhabitant of any State, Territory, or District to the deprivation

died shortly after the alleged incident which forms the basis of the indictment. Defendants were first indicted for murder in the 178th District Court of Harris County. Following a change of venue to Comal County, a jury, on June 10, 1971, returned verdicts of not guilty. On September 8, 1971, a federal grand jury indicted defendants under 18 U.S.C. § 242. The case is presently before the Court on defendants' motion to dismiss the indictments or, in the alternative, to defer a ruling on the motion to dismiss, pending a determination by the United States Supreme Court as to the current validity of Bartkus v. Illinois, infra.

To support their motion to dismiss the indictments, defendants rely primarily on United States v. Mason, 213 U.S. 115, 29 S.Ct. 480, 53 L.Ed. 725 (1909). In that case, the Supreme Court held that a State acquittal precludes a subsequent federal prosecution arising out of the same incident to the extent that the indictment seeks to enforce a particular federal statute, U.S.Rev.Stat. § 5509.[2] The statute provides that if, in committing a federal crime, a defendant also violates State law, the Punishment provided for by the State for such offense shall be imposed by the federal court. The Court in Mason was scrupulous to confine its decision to a construction of § 5509.[3]

Defendants erroneously contend that § 5509 is the predecessor of the present 18 U.S.C. § 242, under which defendants are here charged. The predecessor of §

242, however, was § 5510.[4] Section 5509 was repealed in the Criminal Code of 1909 (the same year as the Supreme Court's decision in Mason) and has never been reenacted.

Section 242 provides that, if death results from the wilful deprivation of a person's civil rights, a defendant may be sentenced to imprisonment for any term of years, or for life. The seeming purpose of § 5509 was to permit the Government to impose on a defendant convicted under § 5507 or § 5508 a punishment equivalent to that prescribed for any State offense committed simultaneously with the federal crime. It might therefore be argued that, even in the absence of § 5509, the Mason rule is broad enough to prevent federal prosecution of defendants under the "if death results" provision of § 242. Under this interpretation, the defendants could be tried upon the substantive aspects of § 242. But with respect to punishment, sentence could not be enhanced because of the fact of Conner's death, and the maximum possible sentence would be limited to a $1,000 fine and/or imprisonment for one year.

■ The analogy to Mason is superficially appealing: the "if death results" feature of § 242 comprehends the State charge of murder, upon which defendants have been acquitted. Upon more careful scrutiny, however, the Mason analogy proves false: "if death results" is not equivalent to "murder," for the latter requires the element of intent.

of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life."

2. § 5509 reads as follows:
"If in the act of violating any provision in either of the two preceding sections any other felony or misdemeanor be committed, the offender shall be punished for the same

with such punishment as is attached to such felony or misdemeanor by the laws of the State in which the offense is committed."

3. The Court held that:
"The question thus presented is within a very narrow compass, and involves an inquiry as to the meaning and scope of § 5509."

4. The Reviser's Note to 18 U.S.C. § 242 reads as follows:
"Reviser's Note. Based on Title 18, U.S.C., 1940 ed., § 52 (Mar. 4, 1909, c. 321, § 20, 35 Stat. 1092 [Derived from R.S. § 5510])."

Although "murder" presupposes the victim's death, "if death results" may frequently lack the requisite elements of murder.[5] The Court in *Mason* was concerned about the possibility of a federal court's having to make a judicial inquiry to ascertain whether a defendant committed a State offense for which he had been previously acquitted in a State Court.[6] Officers McMahon and Hill were acquitted of murder in a State court and thus, this court would be barred from questioning that acquittal. But defendants were *not* acquitted, indeed they were not even tried, on a charge of committing against Conner a violation of § 242, as a result of which Conner died.

Thus, the Court concludes that the *Mason* principle is inapplicable to the case at bar: initially, because the *Mason* court restricted that case to a construction of a statute which has been repealed; and further, because, even if the *Mason* rule has survived the demise of § 5509, defendants have not been charged with any offense, nor does § 242 embrace any offense, for which defendants have been acquitted in the courts of Texas.

■ Finally, defendants' contention that the State jury was instructed on the federal law is without merit. By defendants' own admission, the State court instructed the jury that

> "The law provides that 'If two or more persons conspire to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured him by the Constitution or laws of the United States, they shall be guilty of conspiracy against rights of citizens'."

The language of that instruction is based, not on 18 U.S.C. § 242, upon which the present indictment is ground-

**5.** Furthermore, the federal statute requires that the act be committed "under color of * * * law." No such condition attaches to the State offense.
In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that
"where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Id.*, at 304, 52 S.Ct. at 182.

**6.** The Court reasoned as follows:
"But is § 5509 so worded as to *require* the Federal court, *after* the defendants have been lawfully tried and acquitted as to the identical crime of murder mentioned in the indictment in that court, to enter upon a judicial investigation to ascertain whether the defendants committed the alleged crime against the State of the murder mentioned in that indictment? We think not. The murder in question, if committed at all, was, as a distinct offense, a crime only against the state; and after the defendants were acquitted of that crime by the only tribunal that had jurisdiction of it as an offense against the state, it is to be taken that no such crime of murder as charged in the indictment was in fact committed by them. If

this be not so, it follows that, notwithstanding the lawful acquittal of the defendants by the only tribunal that could lawfully try them for the alleged offense against the state, the United States may, in this case, in the district court of the United States, punish them for the conspiracy charged, precisely as the state court could have punished them for murder if the defendants had been previously found guilty of that crime in the state court. We do not think that § 5509 is necessarily to be so construed. Nor do we think that Congress intended any such result to occur. Such a result should be avoided if it be possible to do so. We hold that it can be avoided without doing violence to the words of the statute. The language of that section is entirely satisfied and the ends of justice met if the statute is construed as *not* embracing, nor intended to embrace, any felony or misdemeanor against *the state* of which, *prior to the trial in the Federal Court of the Federal offense charged*, the defendants had been lawfully acquitted of the alleged state offense by a state court having full jurisdiction in the premises. This interpretation recognizes the power of the state, by its own tribunals, to try offenses against its laws, and to acquit or punish the alleged offender, as the facts may justify. *Id.*, 213 U.S. at 124, 29 S. Ct. at 482.

ed, but upon § 241.[7] The State jury was not given any instruction drawn from the language of § 242.

Defendants have thus not been twice placed in jeopardy in violation of the Fifth Amendment of the United States Constitution. As a result, their motion to dismiss the indictments must be, and it is hereby, denied.

Defendants have further requested the Court to defer the present prosecution pending a decision by the Supreme Court in five cases which challenge the rule of Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), which held that federal constitutional jeopardy provisions do not prevent a State from prosecuting a defendant for acts which formed the basis of a prior federal criminal prosecution. In a companion case, Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), the Court held that a prior State conviction does not bar a federal prosecution for the same act.

On October 12, 1971, the Supreme Court denied petitions for certiorari in all five of the cases on which defendants predicate their motion to hold in abeyance. Jacks v. New Jersey, 404 U.S. 865, 92 S.Ct. 76, 30 L.Ed.2d 109 (1971); Bechtel Corp. v. New Jersey, 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 61 (1971); Feldman v. New Jersey, 404 U.S. 865, 92 S.Ct. 76, 30 L.Ed.2d 109 (1971); Colonial Pipeline Co. v. New Jersey, 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 61 (1971); Leuty v. New Jersey, 404 U.S. 865, 92 S.Ct. 77, 30 L.Ed.2d 109 (1971). All five cases requested that Bartkus be expressly overruled. The Court, presented with an opportunity to overrule a controversial decision, has declined the invi-

tation. It would appear, therefore, that not only Bartkus, but Abbate as well, remains in full effect. Consequently, defendants' motion to hold in abeyance their motion to dismiss the indictment must be, and it is hereby, denied.

---

7. 18 U.S.C. § 241 reads as follows:
   "If two or more persons conspire to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
   If two or more persons go in disguise on the highway, or on the premises of an-

other, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured * * * They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life."