**UNITED STATES of America**

v.

**Steven D. NASWORTHY, Defendant.**

**No. 88–8046–CR–JAG.**

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

April 27, 1989.

Neil Karadbil, Asst. U.S. Atty., West Palm Beach, Fla., for U.S.

Fletcher Peacock, Asst. Federal Public Defender, Fort Lauderdale, Fla., for defendant.

ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the defendant's motion to suppress allegedly, illegally obtained evidence. The court has heard testimony and argument of able counsel at a hearing held on March 3, 1989. The court has also considered the

memorandum of law submitted by both parties.

After observing the demeanor of the witnesses and hearing their testimony, the court makes the following findings of fact. On September 3, 1986 at approximately 6:00 p.m., two United States Customs officers, Keith Puig and Jack Watkins, observed the defendant's boat in the Intracoastal Waterway of Palm Beach County, Florida. The officers observed that the vessel was a twenty-five foot, center-console boat which was, in their experience, a preferred vessel for smuggling. The officers also observed that the vessel was "clean" in that there was very little water splashed on it and the driver appeared to be dry despite the relatively choppy waters on the Intracoastal. After noting that the defendant, Steven Nasworthy, appeared to be the only occupant of the boat, officer Puig said, "Before we eat, I'm going to seize it [the boat]."

The officers followed the defendant to the Phil Foster Park on the Intracoastal Waterway. There, the defendant drove his vessel onto a waiting boat trailer. The trailer was connected to a Ford Bronco vehicle. A man later discovered to be Ricardo Lang was operating the Bronco while two other males stood beside it.

While docking their own boat, the officers observed that the Bronco was having trouble in attempting to pull the defendant's boat out of the water. Officer Puig went to the Bronco and helped Lang to engage the four-wheel drive.

Lang then pulled the boat out of the water and proceeded to drive away. Officer Puig ran after the Bronco and ordered Lang to stop and return to the dock area, which he did.

Prior to the boat being removed from the water, the defendant Nasworthy disembarked from the boat and remained in the dock area with Officer Watkins, who had informed Nasworthy of his identity.

After the Bronco and the boat returned to the dock area, Officer Puig requested that Lang produce the registration for the boat. Lang gave Puig his Florida driver's license and said that the registration was on the boat.

Officer Watkins then requested that Nasworthy produce identification and documentation for ownership of the boat. Nasworthy returned to the boat, retrieved his Florida driver's license and a valid, "open" certificate of title for the boat, and gave these to the officers.

After examining the documents, Officer Puig asked Nasworthy if he could "look around" or "look at" the boat, because he was thinking of buying a similiar model himself. Nasworthy states that he responded, "I don't think it is necessary [for you to search]". However, after considering the credibility of the witnesses, it is apparent that Officer Puig's version of the consent statement is correct and Nasworthy did not object to Puig's statement that he wanted to "look around" or "at" the boat.

Officer Puig then boarded the boat. He decided to search the seat/bench situated just in front of the driver's console. He unsnapped the cushion and lifted the cushioned lid up. He then rummaged through the life jackets lying in the compartment and removed them onto the deck.

Officer Puig then observed, in the area obscured by the life jackets, that there was a unpainted, fiberglass patch on the deck. He tried to lift it with his hands, but could not do so. He returned to his own boat, obtained a standard-head screwdriver, and returned to the defendant's boat. He used the screwdriver to pry open the hatch and observed bales of marijuana in the storage area. The officers then placed Nasworthy and Lang under arrest. Nasworthy testified at the suppression hearing that it was his marijuana which he had agreed to smuggle with the expectation of obtaining the boat as compensation. The other two males who were standing near the Bronco at the dock area had slipped away, undetected.

The U.S. Drug Enforcement Administration declined prosecution, but the state of Florida filed felony charges against Nasworthy for trafficing illegal drugs. The defendant Nasworthy filed a motion to sup-

press in the state prosecution on the same grounds urged in the present motion before this court. The Honorable Harold J. Cohen, Circuit Judge for the Fifteenth Judicial circuit, granted the motion by finding that there was no consent for the search. The state case was then dismissed pursuant to the state's motion.

The United States now seeks to prosecute the defendant Nasworthy on illegal drug charges arising out of the same facts as the state prosecution.

The defendant urges two grounds for suppressing the evidence found on the vessel. First, he contends that the doctrine of collateral estoppel precludes the use of the illegal drugs, as evidence, because it has already been found to be the product of an illegal search. Second, Nasworthy states that he did not consent to the search of the vessel and that the scope of the officer's search certainly exceeded the scope of any colorable expression of consent given.

■ In terms of the collateral estoppel argument, the Supreme Court has stated that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897)). It is also established that collateral estoppel applies in criminal proceedings pursuant to the Fifth Amendment protection against Double Jeopardy. *See Ashe v. Swenson*, 397 U.S. 436, 442–46, 90 S.Ct. 1189, 1193–96, 25 L.Ed.2d 469 (1970); *United States v. Hogue*, 812 F.2d 1568, 1578 (11th Cir.1987).

The key issue is the identity of the parties in the state and federal prosecutions. The government contends that this case is governed by accepted law that there is no violation of Double Jeopardy when both the state and federal sovereigns prosecute an individual on similiar charges arising out of the same facts. *See Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed. 2d 729 (1959).

The defendant Nasworthy relies on the case of *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). There, the Supreme Court held that the federal government was precluded by collateral estoppel from relitigating a constitutional issue because of its role as a "laboring oar" in the conduct of prior, state-court litigation. *Id.* at 155, 99 S.Ct. at 974 (citations omitted).

■ The defendant Nasworthy is correct in noting that substantial involvment in a prior state suit by the federal government in which it is in control of that litigation will preclude it from relitigating the issue in a federal forum. However, the defendant's argument that the "laboring oar" concept applies in this case is unpersuasive.

In *Montana v. United States*, a contractor on a federal dam project challenged Montana's gross receipts tax by filing an action in state court. Subsequent to the filing of that action, the federal government filed suit in federal court on the same ground, but obtained a stay in the federal action until the state litigation was resolved. As the Supreme Court noted, the involvement of the United States in the state litigation was tantamount to "control". 440 U.S. at 155, 99 S.Ct. at 974. Indeed, the United States required the contractor to file the state action, reviewed and approved the complaint, paid the attorney's fees and costs, directed the appeal to the Montana Supreme Court, required an appeal to the U.S. Supreme Court, and directed the contractor to abandon the appeal. *Id.*

■ Involvement of the United States equivalent to control of the state criminal prosecution is not apparent here. The defendant Nasworthy argues that the following facts require application of the "laboring oar" analysis: the U.S. organized and funded the investigation which led to the defendant's arrest; the arresting officers were federal officers using federal equipment; the arrest was made pursuant to federal law; the U.S. Customs office contacted state authorities to allow them to prosecute the defendant; and the federal

officers who arrested Nasworthy were the only witnesses for the state at the prior suppression hearing. While these facts do indicate involvement by federal authorities, they only indicate that degree of participation contemplated in *Abbate* between different sovereigns. Once the state of Florida decided to prosecute the defendant, it controlled the litigation, not the United States. The mere fact that federal law enforcement officers testified on behalf of the state authorities certainly does not rise to the degree of "control" found wrongful in *Montana v. United States*.

The defendant's second argument has more merit. There is no dispute that officers Puig and Watkins searched the defendant's boat without first obtaining a warrant. The issue, then, is whether the search was made incident to one of the allowable exceptions to the warrant requirement. Here, the government contends that Nasworthy consented to a search of the boat, thereby making the discovery of the illegal drugs lawful.

As noted above, the court finds that Nasworthy agreed to allow officer Puig to "look around" or "look at" the boat. However, this consent certainly did not include the subsequent search of the cushioned bench compartment.

It is evident from the defendant's statement that he only consented to a search of the boat's exterior. The statement that officer Puig could "look at" the boat limited the scope of the search. *See United States v. Milian–Rodriquez*, 759 F.2d 1558, 1563 (11th Cir.1985) (citation omitted). The officers here performed a much broader search than that consented to by the defendant. *See Id.* Officer Puig was only authorized to observe the exterior of the boat's deck. Instead, he unsnapped the seat cushion and removed the life jackets in the bench compartment. It was only then that he observed the previously obscured deck which contained the unpainted, fiberglass patch on the hull. Then, rather than seeking a warrant, Officer Puig first attempted to tear the hull apart, and when this did not work, he retrieved a screwdriver from his own boat and broke into the storage area containing the marijuana.

Officer Puig should have obtained a warrant prior to his search of the boat. First, it is doubtful whether he had sufficient facts to demonstrate probable cause prior to his illegal search. The only suspicions professed by the officers were the type of the boat, the apparent lack of water on the boat, and the difficulty the defendants had in lifting the boat from the water. This last fact is more likely hindsight as the officers had apparently decided to seize the boat prior to the time it was docked, as evidenced by their statement that they would seize the boat prior to eating dinner.

Even if there was probable cause to hold the boat to obtain a search warrant, there certainly was not probable cause for Officer Puig to pry open the deck hatch. If this were not the case, the government could continue to search until they found some incriminating evidence and then justify their general search on the basis of after-discovered evidence. There is no reason that the officers here could not have sought a warrant. The boat was on the trailer and the officers had the only two remaining defendants, Lang and Nasworthy, in custody. The defendants had obeyed the officer's requests and had returned the boat to the dock area when asked to do so by Officer Puig. There was no exigent circumstance of the boat's mobility, because there is no dispute that it was within their control.

Accordingly, having considered the above matters, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the motion to suppress evidence filed by the defendant, Steven Nasworthy, is GRANTED. The illegal drugs seized by the federal officers were discovered in the course of an illegal search which violated the defendant's Fourth Amendment rights. The drugs are hereby SUPPRESSED and inadmissible as evidence in the prosecution's case-in-chief.

DONE AND ORDERED.