[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10596
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00250-LMM-CMS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUIYONTAY SANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 5, 2017)

Before JULIE CARNES, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Quiyontay Sanders appeals his conviction for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g).  On appeal, Sanders argues that the district court erred by denying his motion to dismiss the indictment for violation of the Double Jeopardy Clause and by denying his motions to suppress a firearm found during a warrantless search of the apartment in which he was staying. He further argues his subsequent statements to law enforcement should be suppressed as fruits of the poisonous tree.  We address each issue in turn.

## I. Double Jeopardy

Sanders argues that the instant federal prosecution violates his double jeopardy rights because he was previously convicted by the State of Georgia for the same conduct.  He recognizes that Supreme Court precedent allows a federal prosecution following a state prosecution, but contends that these cases should be revisited.

We review *de novo* the district court's denial of a motion to dismiss an indictment on double jeopardy grounds.  United States v. Rivera, 77 F.3d 1348, 1350 (11th Cir. 1996).  We are bound to follow the Supreme Court's decision unless and until the Supreme Court itself overrules that decision.  See United States v. Thomas, 242 F.3d 1028, 1035 (11th Cir. 2001).

Under the dual-sovereignty doctrine, "a single act gives rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates

2

the laws of separate sovereigns." Puerto Rico v. Sanchez Valle, 136 S. Ct. 1863, 1865 (2016). Under this doctrine, the Supreme Court has held that a prior state conviction does not preclude a subsequent federal prosecution based on the same conduct. Abbate v. United States, 359 U.S. 187, 194–96, 79 S. Ct. 666 (1959).

The district court correctly denied Sanders's motion to dismiss the indictment. Binding Supreme Court precedent explicitly holds that a federal prosecution following a state conviction based on the same conduct does not violate the Double Jeopardy Clause. We are bound to apply the Supreme Court's decisions unless and until the Supreme Court itself overrules those decisions. See Thomas, 242 F.3d at 1035.

## II. Warrantless Search

Sanders also argues that the district court erred by failing to suppress the firearm found during a search of the apartment of his then-girlfriend, Meanda Lewis, and his subsequent statements regarding the firearm. He asserts that the warrantless search was unreasonable under the Fourth Amendment and that his subsequent statements should be suppressed as fruits of the poisonous tree.

The denial of a motion to suppress is a mixed question of fact and law; therefore, we review the district court's findings of fact for clear error and the application of law to those facts *de novo*. United States v. Magluta, 44 F.3d 1530, 1536 (11th Cir. 1995). In reviewing a motion to suppress, this Court construes all

3

facts in the light most favorable to the prevailing party below. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). Additionally, the district court, as factfinder, is entitled to substantial deference in reaching credibility determinations with respect to witness testimony. United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003).

The Fourth Amendment provides for the right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. The reasonableness of a search under the Fourth Amendment "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests." Samson v. California, 547 U.S. 843, 848, 126 S. Ct. 2193 (2006) (quotation omitted). Generally, warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408 (1978). Here, the magistrate judge cited three separate grounds that each justify the warrantless search of the residence—Sanders's status as a parolee, the need for a protective sweep of the apartment, and Lewis's consent permitting a search for additional persons.

In Samson, the Supreme Court held that the suspicionless search of a California parolee did not violate the Fourth Amendment. Samson, 547 U.S. at

4

857.  The Court noted that parolees are generally subject to significant parole conditions, and the reach of these conditions demonstrates that parolees "have severely diminished expectations of privacy by virtue of their status alone."  Id. at 852.  The Court further noted that California law required parolees to consent to suspicionless searches, and this search condition was "clearly expressed" to the defendant.  Id.  Thus, the Court determined that the defendant did not have a legitimate expectation of privacy.  Id.  In contrast, the Court reasoned that the state had substantial interests warranting the privacy intrusion, including combating recidivism and promoting reintegration into society.  Id. at 853.

Additionally, officers may conduct a warrantless "protective sweep" of a house while arresting a suspect inside.  Maryland v. Buie, 494 U.S. 325, 331–35, 110 S. Ct. 1093 (1990).  A "protective sweep" is defined as "a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others."  Id. at 327.  These sweeps are confined to a "cursory visual inspection" of places in which a person might be hiding.  Id.  Officers may search closets and spaces immediately adjoining the place of arrest without probable cause or reasonable suspicion.  Id. at 334.  However, to search areas beyond the immediate vicinity of the place of arrest, officers must have articulable facts that, taken together, would warrant a reasonably prudent officer's belief that the area to be swept harbors a person posing a threat.  Id.  In the course of a lawful

5

protective sweep, officers are "free to seize any evidence they discovered in plain view within the proper scope of the protective sweep." United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir. 1991) (en banc).

Finally, even in the absence of reasonable suspicion or probable cause, law enforcement officers may nonetheless search a person's property without a warrant so long as they first obtain the voluntary consent of the person in question. United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989). When conducting a search pursuant to validly given consent, the scope of the search is limited to the terms of its authorization. United States v. Rackley, 742 F.2d 1266, 1270–71 (11th Cir. 1984).

Sanders argues that all three of the grounds adopted by the district court are erroneous, and so the evidence should be suppressed. First, Sanders argues that his parole conditions did not permit the searching of Ms. Lewis's apartment. The lower court found that Sanders was staying at Ms. Lewis's apartment, and his argument that it was not his place of residence "rings hollow." The court's determination that Ms. Lewis's apartment was Sanders's residence is supported by evidence, such as the statements of Sanders's mother and the clothing found at the apartment. We cannot say that this conclusion is clearly erroneous, so the court's factual determination must be upheld. The magistrate also stated that even if Sanders was only an overnight guest, he had no reasonable expectation of privacy

6

because he was a parolee. We need not reach that issue because the other two reasons given for upholding the search are valid.

Second, Sanders argues that a protective sweep of the apartment was unwarranted and, even if it was warranted, the search exceeded the permissible scope of a protective sweep. The lower court found that the officers' belief that the apartment may not be empty was reasonable in light of the information available to the officers. For instance, the officers knew that Sanders was a member of a gang and that gang members were known to be in close proximity with each other. Once again, the lower court's conclusions of fact are supported by the evidence. Further, the lower court found that Ms. Lewis had given permission to the officers to search for other persons in the apartment. This factual conclusion was not seriously challenged by appellant.

The lower court further found that moving the bedding in the upstairs bedroom did not exceed the scope of the permissible search. The court found that the pile of bedding was "big enough for someone to be hiding under." Sanders says that it "defies belief" that a pile of bedding that size could be moved by an agent's foot. However, the lower court is entitled to substantial deference in credibility determinations, so we defer to its determination that the bedding was substantial enough to hide a person. Because the bedding was large enough to hide a person, it

7

was not unreasonable for the agents to kick aside the pile of bedding, revealing the gun at issue.

The district court correctly denied Sanders's motion to suppress the firearm found in the apartment and his subsequent statements regarding the firearm. The district court did not clearly err in determining that the apartment the officers searched was Sanders's residence, and thus, the apartment was subject to a suspicionless search pursuant to the conditions of Sanders's parole. See Samson, 547 U.S. at 857. Moreover, the district court correctly determined that the firearm should not be suppressed because it was found in plain view during a lawful protective sweep of the apartment and because Lewis had consented to allow the officers to search the apartment for additional people inside. See Tobin, 923 F.2d at 1513; Blake, 888 F.2d at 798. Finally, moving aside the blankets on the bed pallet did not exceed the scope of a protective sweep or Lewis's consent, as the court found that a person could have been hiding in the bedding. Accordingly, we affirm.

**AFFIRMED.**