Jack Schultz, J.
I
The basic issue before this court is whether or not the Federal Government by its regulation of radio communications and use of citizens’ band radios has pre-empted the pertinent statutes of the State of New York.
The defendant, Peter M. Vogler, is charged with repeatedly using profane and obscene language on a citizens’ band radio. A complaining witness, also a citizens’ band operator, requested the defendant to stop broadcasting on a channel normally used for emergencies. The defendant, in response, directed his abusive and obscene attacks over the air at the complaining witness. As the defendant spoke, other citizens in co-operation with the Onondaga County Sheriff’s Department and using sophisticated radio and monitoring equipment were *710 able to track down the offender’s location and defendant was subsequently arrested.
The defendant was charged with the misdemeanor of aggravated harassment, a violation of subdivision 1 of section 240.30 of the New York Penal Law. The statute provides as follows: "A person is guilty of aggravated harassment when, with intent to harass, annoy, threaten or alarm another person, he:
"1. Communicates, or causes a communication to be initiated by mechanical or electronic means or otherwise * * * by telephone, or by telegraph, mail or any form of written communication.”
The defendant argues that the misdemeanor complaint and information should be dismissed because the subject matter is exclusively regulated by Federal law.
The defendant’s contention raises a difficult issue as the prosecutor, defense counsel, and the court believe it is the first case of its kind in New York.
After an examination of the applicable statutes, the court finds that the Federal Government has pre-empted the State statutes and the case at bar is a matter for the Federal court. By doing so however, this court does not pass or state that the language used by the defendant was not obscene and only addresses itself to the issue of the regulation of citizens’ band radios.
II
It is obvious that the Federal regulations include citizens’ band radios, as one must apply for a license with the Federal Communications Commission before one is legally entitled to broadcast. There are no State licenses. The Federal Communications Commission has promulgated a separate part regarding the regulation of citizens’ band radios (47 CFR Part 95). The basis and purposes of art 95 are similar to all other radio regulations in that it is "pursuant to the provisions of Title III of the Communications Act of 1934, as amended”. (47 CFR §95.1.) The Federal Communications Commission has therefore included citizens’ band radios as part of its regulatory scheme. More importantly, section 95.83 (subd [a], par [2]) of title 47 of the Code of Federal Regulations states that: "A citizens radio station shall not be used:
*711 "(2) For the transmission of communications containing obscene, indecent, profane words, language, or meaning.”
Ill
The defendant contends that the subject matter of the case is exclusively regulated by the Federal Government under section 1464 of title 18 of the United States Code which states in part that it is a felony whenever one: "utters any obscene, indecent, or profane language by means of radio communication [and] shall be fined not more than $10,000 or imprisoned not more than two years, or both.” In light of such explicit language, the People’s contention that the Federal statute only deals with obscenity and not radio broadcasting must fail.
First, the Federal statute, unlike the New York statute, specifically states that it is concerned with "radio communication”. Second, the legislative history of the statute shows the Congressional intent to specifically deal with radio communications. Section 1464 of title 18 of the United States Code evolved from the Radio Act of 1927 which first prohibited the use of "obscene, indecent or profane” language. It was repealed and replaced by section 326 of the Federal Communications Act of 1934 (US Code, tit 47, § 326) in an effort to standardize all radio broadcasts and regulations. In 1948, the last sentence of section 326, pertaining to the use of obscenity, was deleted and became part of section 1464 of title 18 of the United States Code. Therefore, the statute is not only concerned with obscenity but, more specifically, obscenity on radio broadcasts.
The People argue that title 47 of the United States Code, concerned with radio regulations, does not mention or limit the use of obscenities on the airwaves. However, careful observations show that section 1464 of title 18 of the United States Code is an integral part of title 47. Title 47 of the United States Code acknowledges the obscenity statute when it discusses violations or revocations of licenses. (See US Code, tit 47, § 303.) In 1960, the United States Congress felt that the 1934 act was too lenient in its license revocation penalties and added a monetary penalty. In doing so, Congress showed its recognition of section 1464 of title 18 of the United States Code as part of title 47 when it specifically stated that penalties would apply to the violation of "section * * * 1464 of Title 18” (US Code, § 503, subd [b], par [1], cl [E]).
*712 Finally, the conclusion that the Federal Government has power to prohibit obscenities from the airwaves is supported by the United States Supreme Court. In Head v New Mexico Bd. (374 US 424, 444) though not entirely on point, the court noted that the obscenity prohibition statute, section 1464 of title 18 of the United States Code, was an example where "Congress had enacted detailed regulations of broadcasting practices.”
IV
The fact that the broadcast may have been wholly intrastate due to the limited range of citizens’ band radios does not act to deprive the Federal courts of jurisdiction. This issue was directly addressed in Gagliardo v United States (366 F2d 720). The Court of Appeals in the Ninth Circuit held that although the broadcasts were completely intrastate transmissions, as in the case at bar, Congress had the power to regulate the airwaves because of the propensity of a broadcast being transmitted across State lines by either its location, "unusual atmospheric conditions” or by being in a mobile unit such as a car.
"The fact that [defendant’s] isolated transmission may not have traversed state borders is irrelevant since it is the cumulative impact on interstate commerce of all citizens’ band radio transmissions which enables Congress to regulate all such transmissions. Heart of Atlanta Motel v. United States, supra, 379 U.S. 241 at 275-277”. (Gagliardo v United States, supra, p 723.)
This court is asked to infer that the use of "communications by electronic means” in subdivision 1 of section 240.30 of the New York Penal Law includes citizens’ band radio transmissions. This court must disagree. As mentioned previously, Federal regulation explicitly governs radio and citizens’ band broadcasts while the New York statute makes no reference to such transmissions. In fact, as noted in the practice commentary by Richard G. Denzer and Peter McQuillan (Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 240.30, 1976-77 Pocket Part, p 88), the use of the terms "electronic means” refers to "the electronic devices that attach to the telephone”. There is no intent to pre-empt or duplicate the Federal regulations regarding radio broadcasting.
*713 VI
The New York statute makes no mention of radio broadcasting, nor was it intended to do so. However, section 1464 of title 18 of the United States Code and section 95.83 of title 47 of the Code of Federal Regulations specifically address themselves to the regulation and elimination of obscene broadcasts on citizens’ band radios.
Finally, even if this court was willing to construe section 240.30 of the New York Penal Law as including citizens’ band radios, it is apparent that this court must accede to the Federal regulatory scheme involving citizens’ band radios. A two-prong test exists in determining the outcome of a conflict of laws. A valid State statute must be upheld unless there is found such conflict between the two schemes of regulations that both cannot stand in the same area or evidence of Congressional design to pre-empt the field. (Firelands Sewer & Water Constr. Co. v Valentine, 404 F Supp 1231, 1234; Head v New Mexico Bd. of Examiners, 374 US 424.) The establishment of a regulatory commission, the Federal Communications Commission, plus Federal licensing and enforcement of violations in the broadcasting field are evidence of a Congressional intent to pre-empt the sphere of radio broadcasting.
CONCLUSION
The New York statute does not include, nor was it intended to include the regulation of obscene radio broadcasts. On the other hand, Federal laws such as section 1464 of title 18 of the United States Code and section 95.83 of title 47 of the Code of Federal Regulations explicitly prohibit obscene radio transmissions and therefore would effectively pre-empt the State statute even if it were construed. On this basis, the information and misdemeanor complaint must be dismissed.