980 So.2d 569 (2008)
James W. MENEFEE, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-2590.
District Court of Appeal of Florida, Fifth District.
April 25, 2008.
*570 Wm. J. Sheppard and D. Gray Thomas, of Sheppard, White, Thomas & Kachergus, P.A., Jacksonville, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
In this appeal from a judgment and sentence for commission of the offense of misdemeanor stalking, the appellant, James W. Menefee, Jr., asserts that he was erroneously convicted because the method by which he chose to stalk was with his ham radio. More specifically, he contends that the federal government has preempted the field of regulation of ham radio operations, and that the State is without jurisdiction to prosecute him because the Federal Communications Commission ("FCC") already regulates amateur radio operators and their transmissions. We conclude, however, that the field has not been so completely preempted by the federal authorities as to preclude a conviction of Mr. Menefee for his harassing and threatening conduct, and we, therefore, affirm.
Mr. Menefee was charged by amended information with aggravated stalking with credible threat in violation of section *571 784.048(3), Florida Statutes (2004). Mr. Menefee and the victim, Salvatore Viglione, both Florida residents, are licensed by the FCC as amateur radio operators. Mr. Menefee argued in a pretrial motion to dismiss that because the channel of communication used to harass Mr. Viglione is regulated by the federal government, the State is preempted from punishing him for the threatening comments he made on those airwaves. The trial court denied the motion, and the case proceeded to trial.
The State presented evidence that Mr. Menefee had for many days repeatedly threatened to kill Mr. Viglione over the radio airwaves, indicating, for example, that he intended to put a bullet between his eyes the next time he saw him. Among many other things, he also made utterly crude comments about the victim's wife and daughter, and broadcast that Mr. Viglione was a convict and suffered from AIDS. Mr. Viglione testified that he was emotionally distressed as a result of Mr. Menefee's conduct, and that he believed that the threats were credible. A jury, however, found Mr. Menefee guilty of the lesser included offense of misdemeanor stalking, and this appeal ensued.
Mr. Menefee argues that communications made by way of a licensed amateur radio operation are exclusively regulated by federal law, and that the State is, accordingly, precluded by the Supremacy Clause of the United States Constitution,[1] from regulating matters related to such ham radio broadcasts and their content. He therefore contends that the trial court erred in denying his motion to dismiss. While Mr. Menefee's argument is intriguing, it misses the point. In prosecuting him the State was not seeking to regulate the air waves, rather it was seeking to punish him for his criminal conduct.[2]
Under the Supremacy Clause, federal law may expressly or impliedly preempt state law in a given subject area. State v. Harden, 938 So.2d 480, 485-86 (Fla.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2097, 167 L.Ed.2d 812 (2007); State v. Stepansky, 761 So.2d 1027, 1030-31 (Fla. 2000), cert. denied, 531 U.S. 959, 121 S.Ct. 385, 148 L.Ed.2d 297 (2000). A state, accordingly, is not permitted to assert jurisdiction where Congress clearly intended to preempt a particular field of law. Harden, 938 So.2d at 486; see Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). In this connection the United States Supreme Court has recognized three specific types of preemption: (1) express preemption; (2) implied field preemption; and (3) implied conflict preemption. Id.
Express preemption occurs when Congress has signaled its intent to preempt state law by using language in the federal statute that explicitly preempts state regulation. Id. (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)); Hughes v. Attorney Gen. of Fla., 377 F.3d 1258, 1265 (11th Cir.2004). Even if there is no unequivocal language, however, state legislation in a subject area may still be preempted by implied field preemption if "[the] scheme of federal regulation [is] so pervasive as to make reasonable *572 the inference that Congress left no room for the States to supplement it." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). See also English v. Gen. Elec. Co., 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Finally, a state regulation is preempted by an implied federal conflict where "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); Felder v. Casey, 487 U.S. 131, 138, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); Perez v. Campbell, 402 U.S. 637, 649, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
When conducting a preemption analysis in an area traditionally and ordinarily regulated by the states, there is a presumption against preemption that should be applied. Hughes v. State, 943 So.2d 176, 185 (Fla. 3d DCA 2006), review denied, 959 So.2d 716 (Fla.2007); see also Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (asserting that when Congress legislates in a field that the states have traditionally occupied, the court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress") (citation omitted). The United States Supreme Court has observed in this regard that "the States under our federal system have the principal responsibility for defining and prosecuting crimes." Stepansky, 761 So.2d at 1030-31 (quoting Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959)); see also United States v. Lopez, 514 U.S. 549, 561, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). It is clear that the criminal law is an area traditionally regulated by the states, and that stalking is codified in Florida as a criminal offense. Thus, if Mr. Meneffe is to succeed, he must overcome the presumption against preemption of this state criminal-control activity. Id.; Air Line Pilots Ass'n, Int'l v. UAL Corp., 874 F.2d 439 (7th Cir.1989); State v. Klinakis, 206 Ga. App. 318, 425 S.E.2d 665, 669 (1992).
As Mr. Menefee frankly acknowledges, neither the Federal Communications Act, nor the regulations implementing that legislation contain a provision expressly preempting the states from punishing those who use the radio airways to criminally harass a victim. Since express preemption is not argued, we turn now to a consideration of implied preemption.
The first determination we must make in this connection is whether the federal regulations governing ham radios are "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Harden, 938 So.2d at 486. We begin by noting that so-called "implied field preemption" should not be inferred "simply because [an] agency's regulations are comprehensive." Hughes, 943 So.2d at 186 (quoting R.J. Reynolds Tobacco Co. v. Durham County, N.C., 479 U.S. 130, 149, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986)).
As the "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole," we begin our consideration of implied field preemption by examining the object and *573 policy underlying the Federal Communications Act. Gade, 505 U.S. at 98, 112 S.Ct. 2374. The Act at 47 USC § 152 (1996), indicates that it governs:
[A]ll interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided. . . .
In order to effectuate the Act, Congress created the FCC:
For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States . . . for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication. . . .
47 USC § 151 (1996).
In accordance with this grant of authority the FCC forbids amateur radio operators to transmit "communications intended to facilitate a criminal act . . . [and] obscene or indecent words or language." 47 CFR § 97.113. Additionally, Congress has through statute prohibited the use of obscene, indecent, or profane language by means of radio communication. 18 USCA § 1464 (1994). The FCC, however, does not have free range to regulate such language, but can only do so "in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." Id. For example, the United States Supreme Court has found an adequate compelling interest for such regulation in the government's desire to protect children from indecent material in light of radio's unique pervasiveness and accessibility to them. Action for Children's Television v. F.C.C., 58 F.3d 654 (D.C.Cir.1995) (citing F.C.C. v. Pacifica Found, 438 U.S. 726, 750-51, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978)). While the regulations prohibit ham transmissions of this language, and authorize the FCC to enforce its authority by fine, license forfeiture and other means, there is nothing contained within the Act or its implementing regulations that suggests that states may not take action to charge a ham radio operator criminally for conduct that would constitute a crime. The State, by implementing its criminal law, is not "regulating" the transmission, as such. It does not prohibit, monitor or block the transmission. Rather, it effects its presumptive right to enforce criminal laws if they are broken by means of the transmission; a right that does not otherwise interfere or conflict with the authority of the FCC to regulate ham operators.
In examining other cases that deal with the regulation of ham radio stations, we note that the states have been authorized to some extent to regulate the height of ham radio antennas. See, e.g., Pentel v. City of Mendota Heights, 13 F.3d 1261 (8th Cir.1994); Marchand v. Town of Hudson, 147 N.H. 380, 788 A.2d 250 (2001). See also Dispoto v. Marion County, 969 So.2d 423 (Fla. 5th DCA 2007). In fact, the FCC has adopted a ruling that requires state and local governments only to afford "appropriate" recognition to federal interests in order to avoid "unnecessary" conflicts with FCC policy. In re Federal Preemption of State and Local Regulations *574 Pertaining to Amateur Radio Facilities, 101 F.C.C.2d 952, 1985 WL 260421 (1985). Thus it is clear that the federal statute and regulations do not entirely preempt the ham radio transmission field because states may to some extent control station antennas. We conclude, therefore, that neither the Congress, nor the FCC impliedly intended to preempt the entire field of ham radio operation. There is room for the states to operate, so long as they recognize and give precedence to federal interests, particularly in view of the fact that the states have historically been responsible for the enforcement of their own criminal laws.
We turn now to the policy and object of the state statute that Mr. Menefee was convicted of violating to determine whether enforcement of it violates the doctrines of implied conflict preemption. Section 784.048, Florida Statutes, was enacted "to protect victims, their families and friends from the needless torment" caused by the "knowing and willful course of conduct by any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury. . . ." 1992 Fl. ALS 208; 1992 Fla. Laws ch. 208; 1992 Fla. HB 97. More specifically, section 784.048(3), Florida Statutes (2004), provides that:
Any person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury of the person, or the person's child, sibling, spouse, parent, or dependent, commits the offense of aggravated stalking, a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
"Harass" is defined as "means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. (2004). Additionally, a "credible threat" is "a threat made with the intent to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause bodily injury to, a person." See § 784.048(1)(c), Fla. Stat. (2004). Thus, the statute in question was enacted to protect victims from intentional threatening conduct that causes substantial emotional distress in the form of a reasonable fear for one's safety.
Mr. Menefee was charged and convicted for his criminal conduct in using ham radio transmissions as the tool for his crime. He could have chosen to use a telephone to do so, even though that medium is regulated by the FCC. He could have used letters to do so, even though the mail is regulated by the United States Postal Service. For that matter, he could have used a banner plane to stalk and threaten Mr. Viglione, even though that medium is regulated by the Federal Aviation Administration. By charging Mr. Menefee criminally, there simply was no regulation by Florida of ham radio operators. As we have been unable to find any language within the Federal Communications Act suggesting an implied conflict preemption of this criminal aspect of the use of ham radios, we cannot conclude that the trial court erred in denying the motion to dismiss.
Moreover, to hold otherwise would allow a gaping hole in the authority of the State to prohibit stalking and related offenses. Virtually all means of communication are to some extent controlled by the federal government. It seems clear that Congress would not have forbidden the states to prosecute crimes that were in some way *575 accommodated by a regulated means of communication.
Accordingly, we affirm the judgment and sentence.
AFFIRMED.
PLEUS and COHEN, JJ., concur.
NOTES
[1] Article VI, Clause 2.
[2] We are aware of People v. Vogler, 90 Misc.2d 709, 395 N.Y.S.2d 881 (N.Y.Town Ct.1977), which involved an attempt by the state to regulate the use of obscenity by a person broadcasting with a Citizen's Band radio. While this case is distinguishable because obscenity transmissions are specifically controlled by the Federal Communications Act, we disagree in any event with the analysis and conclusions of the case.