Henry BLACKBURN, Frank Davis, Richard L. Doege, Francis Hyde, Gerald Kaplan, and Marjorie Thies, Appellants,

v.

DOUBLEDAY BROADCASTING COMPANY, INC., KDWB–FM; Malrite of Minnesota, Inc., KEEY–FM; Entertainment Communications, Inc., WAYL–FM; Hudson Broadcasting Corporation, KQRS–FM; Emmis Broadcasting of Minnesota, WLOL–FM, Respondents.

No. C0–83–952.

Supreme Court of Minnesota.

Aug. 10, 1984.

Thomas P. Kane, Mark S. Olson, Rupert M. Mitsch, John Tunheim, St. Paul, for appellants.

Robert R. Weinstine, Steven C. Tourek, Darron C. Knutson, St. Paul, for respondents.

SCOTT, Justice.

Plaintiffs appeal from a judgment entered in the Hennepin County District Court, dismissing their claims that defendants' radio transmissions constitute an actionable nuisance by distorting their reception of other desired radio signals and that defendants have breached their lease agreements by causing spurious radiation and emissions. The trial court ruled (1) that the Federal Communications Act, 47 U.S.C. §§ 151 et seq., preempted plaintiffs' nuisance claim because the Federal Communications Commission (FCC) has been delegated exclusive jurisdiction to regulate interference between radio stations, and (2) that plaintiffs were merely incidental beneficiaries of defendants' lease agreements and, therefore, they have no rights under those agreements. We affirm.

Plaintiffs are individuals who live and/or work in the Minneapolis area and who listen to radio stations WCCO–FM and KSJN–FM. Defendants are five radio stations which broadcast from a transmission facility atop the IDS tower in Minneapolis, Minnesota. They began broadcasting from that facility on October 13, 1979, pursuant to authorization granted by the FCC.

Shortly after the defendants began operating, the FCC received complaints that their transmissions interfered with or distorted the reception of broadcasts by WCCO–FM and KSJN–FM. As a result, the FCC ordered defendants to decrease the power of their transmissions from the 100-kilowatt level originally authorized to 50 kilowatts. Defendants were informed as follows by a telegraphic message dated November 21, 1979: "Due to numerous

complaints of blanketing interference, necessary reduce effective radiated power to fifty kilowatts except from midnight to six A.M. Advise what action taken to resolve specific complaints and submit proposal for resolution of general problem with[in] thirty days." The FCC subsequently developed an extensive testing program to obtain data on the nature and extent of any interference. That testing was to be completed by the fall of 1982, and the matter was then to be submitted to the FCC for disposition. There is no indication in the record that the matter has been resolved.

Plaintiffs brought this action on June 24, 1982, claiming that defendants' transmissions have distorted their reception of WCCO–FM. and KSJN–FM since October 12, 1979.[1] Defendants' transmissions allegedly harm plaintiffs in two distinct ways. First, the transmissions allegedly constitute an actionable nuisance under Minnesota law. Second, plaintiffs claim they are third-party beneficiaries of lease agreements entered into by defendants and that defendants have breached those agreements by causing spurious radiation and emissions. They seek damages in excess of $50,000 and injunctive relief to prohibit defendants from transmitting atop the IDS tower and to prohibit them from causing distorted reception of broadcasts by WCCO–FM and KSJN–FM.

We need only address the following two issues in our disposition of this case:

(1) Assuming plaintiffs have stated an actionable nuisance claim, whether the Federal Communications Act preempts this claim.

(2) Whether the plaintiffs are third-party beneficiaries under defendants' lease agreements.

1. Plaintiffs essentially claim that defendants' signals distort their reception of WCCO–FM and KSJN–FM and that such distortion constitutes an actionable nuisance under state law.[2] On appeal defendants contend, as they did below, that plaintiffs failed to state a cause of action because they have no property right in receiving a certain quality of signal from those two stations. The trial court did not rule on that issue. Rather, assuming plaintiffs stated an actionable nuisance claim, it ruled that the Federal Communications Act would preempt such a state law claim. We agree with the trial court.

■ The Federal Communications Act constitutes a plenary exercise of the federal government's power to occupy and regulate the broadcast industry. *See generally* Note, *State Regulation of Radio and Television*, 73 Harv.L.Rev. 386 (1959). Pursuant to that Act, Congress delegated comprehensive powers to the FCC to administer a "unified and comprehensive regulatory system for the industry." *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 U.S. 134, 137, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940); *see also National Broadcasting Co. v. United States*, 319 U.S. 190, 217, 63 S.Ct. 997, 1009, 87 L.Ed. 1344 (1943). Among its duties, the FCC grants licenses and allocates "frequencies, hours of operation and * * * power" to broadcasters "if public convenience, interest, or necessity will be served thereby." 47 U.S.C. § 307; *see also* Note, *supra*, at 387. In carrying out its duties, it is authorized to "[m]ake such regulations not inconsistent with law as it may deem necessary to prevent interference between stations." 47 U.S.C. § 303(f).

The trial court ruled that the Federal Communications Act would preempt the

---

1. Plaintiffs brought this action on behalf of themselves and all others similarly situated. Because of the trial court's disposition of this matter, it never ruled on plaintiffs' motion to have the matter certified as a class action.

2. Minn.Stat. § 561.01 (1982) provides:
   Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered.

state law nuisance claim pled here, because the FCC has exclusive jurisdiction to regulate "interference" between stations. On appeal, plaintiffs contend that the trial court erred because (a) there is a genuine issue of material fact as to whether the FCC has jurisdiction to regulate the phenomena in question here, and (b) even if the FCC has jurisdiction over the matter, the Act expressly indicates an intent not to preempt state law claims.

(a) In their complaint, plaintiffs avoided using the term "interference." Instead, they alleged that defendants' transmissions "distorted" their reception of WCCO–FM and KSJN–FM. Rejecting plaintiffs' arguments that there is a factual difference between "interference" and "distortion" and that the FCC does not have jurisdiction to regulate the alleged "distortion" at issue here, the trial court concluded that this matter was ripe for summary judgment.[3] The trial court reasoned that the terms "interference" and "distortion" are synonymous, according to their ordinary meaning, and therefore ruled that the FCC had jurisdiction to regulate the phenomena in question.

■ We reject plaintiffs' initial claim that the trial court erred by resolving at the summary judgment stage the disputed factual issue of whether there is a difference between "interference" and "distortion." There is nothing in this record to substantiate their claim that a factual dispute exists. They put nothing in the record to evince any special industry meaning distinguishing between "distortion" and "interference." Nor have they pointed to any definition in the Federal Communications Act or the FCC's regulations to establish that the trial court erred by giving "interference" its common meaning in this context. Plaintiffs cannot create a genuine issue of fact merely by pleading that the phenomenon in question is "distortion." *See Erickson v. General United*

*Life Insurance Co.*, 256 N.W.2d 255, 259 (Minn.1977). Moreover, with respect to recent amendments to the Federal Communications Act, a House Conference Report stated that "[r]adio frequency interference (RFI) arises when a signal radiated by a transmitter is picked up by an electronic device in such a manner that it prevents the clear reception of another and desired signal * * *." 1982 *U.S. Code Cong. & Ad. News* 2237, 2265. Essentially, the gravamen of plaintiffs' complaint is that defendants' signals prevent them from clearly receiving other desired signals. Hence, we conclude that plaintiffs are alleging "interference" within the meaning of the Federal Communications Act.

We also reject plaintiffs' alternative argument that, even if "distortion" and "interference" are the same, the FCC does not have jurisdiction to regulate the type of "interference" here involved. Claiming that the "interference" is caused by blanketing, plaintiffs cite 47 C.F.R. § 73.315(e) (1983) in support of their position. That regulation provides:

> Present information is not sufficiently complete to establish "blanket areas" of FM broadcast stations, which are defined as those areas adjacent to the transmitters in which the reception of other stations is subject to interference due to the strong signal from the stations * * *. The authorization of station construction in areas where blanketing problems appear to be excessive will be on the basis that the applicant will assume full responsibility for the adjustment of reasonable complaints arising from excessively strong signals of the applicant's station.

■ Even assuming that the alleged "interference" is caused by "blanketing," plaintiffs' argument fails because they confuse the failure to exercise jurisdiction with a lack of jurisdiction. While that regulation shows the FCC has not, as of yet, established technical rules with respect to

---

**3.** Summary judgment should be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03.

FM "blanketing areas," it does not support plaintiffs' contention that the FCC has no jurisdiction to do so. Rather, it supports the opposite conclusion. In fact, the FCC has instituted a proposed rulemaking proceeding to examine requested rule changes "to define FM 'blanketed' areas and the licensee's responsibility for remedying interference complaints within it." *FM Broadcast Station Blanketing Interference*, 47 Fed.Reg. 18936 (1982).[4] *Cf.* 47 C.F.R. § 73.88 (1983) (regulation concerning AM "Blanketing interference"). We, therefore, uphold the trial court's ruling that the FCC has jurisdiction to regulate the interference phenomenon which serves as the basis for plaintiffs' nuisance claim.

■■■ (b) We must now address the question of whether federal law preempts this type of state law claim. Preemption of state law by federal statute or regulation is not favored "in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). In general, state law may be preempted in the following circumstances:

> [F]irst, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law * * *; second, when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby "left no room for the States to supplement" federal law * * *; and, finally, when compliance with both state and federal law is impossible * * * or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Capital Cities Cable, Inc. v. Crisp*, —— U.S. ——, ——, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984) (citations omitted). In determining whether preemption is appropriate, a key question is whether Congress intended to make its jurisdiction exclusive. *See Silkwood v. Kerr-McGee Corp.*, —— U.S. ——, 104 S.Ct. 615, 622, 625–26, 78 L.Ed.2d 443 (1984); *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424, 430, 83 S.Ct. 1759, 1763, 10 L.Ed.2d 983 (1963).

While nothing in the Federal Communications Act expressly preempts a state law nuisance claim based on alleged excessive interference between stations, plaintiffs take the position that the Act expressly precludes preemption of such a claim. Relying on 47 U.S.C. § 414, they contend that Congress has unmistakably expressed its intent to not preempt state law remedies. That statute provides: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

The United States Supreme Court, however, has refused to read such clauses so literally. In *Texas & Pacific Railway v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), the Court, despite the existence of a saving clause virtually identical to section 414, struck down a state common law cause of action challenging a rail carrier's rate as "unjust and unreasonable." The court did so because rate regulation was within the exclusive jurisdiction of the Interstate Commerce Commission, and a state court action "would be absolutely inconsistent with the provisions of the act." *Texas & Pacific*

---

4. The proposed rulemaking proceeding was summarized as follows:

> The Commission proposes to amend its rules to establish a specific signal level defining the "blanketed" areas around an ·FM broadcast station's antenna. An area is "blanketed" whenever the station's signal is so strong that it partly or completely blocks the reception of other broadcast stations on different frequencies. The proposed rule changes also would state the applicant's responsibility when interference occurs. Rules are needed to protect the public's right to receive other stations without interference. *FM Station Blanketing Interference*, 47 Fed.Reg. 18936 (1982).

*Railway,* 204 U.S. at 446, 27 S.Ct. at 358. *See also Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318–19, 101 S.Ct. 1124, 1130–31, 67 L.Ed.2d 258 (1981). Later, the United States Supreme Court described the saving clause discussed in *Texas & Pacific Railway* as follows:

> That proviso was added at the end of the statute,—not to nullify other parts of the Act, or to defeat rights or remedies given by preceding sections,—but to preserve all existing rights which were not inconsistent with those created by the statute.

*Pennsylvania Railroad v. Puritan Coal Mining Co.,* 237 U.S. 121, 129, 35 S.Ct. 484, 486, 59 L.Ed. 867 (1915). The Court recently cited with approval that construction of a saving clause identical to the one involved in this case. *See Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 298–300, 96 S.Ct. 1978, 1984–1985, 48 L.Ed.2d 643 (1976). Thus, even in light of 47 U.S.C. § 414, the preemption question turns on whether there exists an irreconcilable conflict between the purposes of the Federal Communications Act and the common-law remedy at issue.[5]

In light of the purposes of the Act, courts and commentators have concluded that Congress intended to exercise exclusive jurisdiction over regulating interference between radio stations. One commentator has stated:

> The principal aim of the FCA was to eliminate the mechanical interference which had resulted from the absence of uniform control over the allocation of broadcasting frequencies. It seems clear, therefore, that at least in the actual control of the technics of radio and

television transmission federal preemption was intended.

Note, *supra,* at 387–88; *see also Federal Communications Commission v. Sanders Brothers Radio Station,* 309 U.S. 470, 474, 60 S.Ct. 693, 697, 84 L.Ed. 869 (1940). The United States Supreme Court has noted in dicta that the FCC clearly has exclusive control "over technical matters such as frequency allocation." *Head,* 374 U.S. at 430 n. 6, 83 S.Ct. at 1763 n. 6. Finally, a state court has stated:

> The fundamental rationale for the Communications Act of 1934 * * * is based on the fact that the number of available radio frequencies is finite, and therefore, Congress must exercise its power over interstate commerce to allocate available frequencies and control their use * * *. Unquestionably, federal legislation has pre-empted local regulation of radio transmission, including assignment of frequencies, interference phenomena, and the content of broadcast material.

*Schroeder v. Municipal Court of Los Cerritos Judicial District,* 73 Cal.App.3d 841, 847, 141 Cal.Rptr. 85, 87 (1977), *appeal dismissed,* 435 U.S. 990, 98 S.Ct. 1641, 56 L.Ed.2d 81 (1978) (citations omitted); *see also Williams v. Hyrum Gibbons & Sons Co.,* 602 P.2d 684, 688–89 (Utah 1979).

The legislative history of recent congressional amendments to the Federal Communications Act further supports the conclusion that Congress intended to exercise exclusive jurisdiction over regulating interference between radio stations. Those amendments essentially authorize the FCC to regulate minimum performance standards for home electronic equipment and systems to reduce their susceptibility to

---

5. The United States Supreme Court has held that section 315 of the Federal Communications Act impliedly immunized a licensee from liability for libelous materials broadcast over stations by a candidate for public office. *Farmers Educational & Cooperative Union of America, North Dakota Division, v. WDAY, Inc.,* 360 U.S. 525, 79 S.Ct. 1302, 3 L.Ed.2d 1407 (1959). Although the Court never expressly mentioned section 414 of the Act, it stated, "[W]e have not hesitated to abrogate state law where satisfied that its enforcement would stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 535, 79 S.Ct. at 1308. *See also Silkwood,* 104 S.Ct. at 626 ("preemption should not be judged on the basis that the federal government has so completely occupied [a] field * * * that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of federal law").

interference caused by radio frequency energy. *See* section 108 of the Communications Act of 1982, Pub.L. 97–259. The House Conference Report stated that one purpose of the amendment was "to clarify that the exclusive ̀ jurisdiction over RFI [Radio Frequency ̅ Interference] incidents (including preemption of state and local regulation of such phenomena) lies with the FCC." 1982 *U.S. Code Cong. & Ad.News* 2267. It also stated that the amendments were:

> further intended to clarify the reservation of exclusive jurisdiction to the Federal Communications Commission over matters involving RFI. Such matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems. Rather, the Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.

*Id.* at 2277.

Plaintiffs argue that those statements in context refer only to interference problems caused by amateur and Citizens Band radio operators. We disagree. Rather, the House Conference Report was discussing a specific problem in light of Congress' intent to exercise exclusive jurisdiction over RFI problems in general. For the above reasons, we conclude that Congress intended to exercise exclusive jurisdiction over regulating interference between radio station signals.[6]

Thus, the question becomes whether enforcement of the instant state law claim would be inconsistent with that intent. Plaintiffs here are seeking damages and injunctive relief because the IDS stations' signals allegedly constitute a nuisance by interfering with their reception of other desired signals. To resolve that claim, the state court would be required to determine just what level of interference, if any, is inappropriate between these broadcasters. That, however, is precisely the subject matter which lies within the exclusive regulatory jurisdiction of the FCC. It is quite apparent, therefore, that the state court may reach results which conflict with the regulations imposed on defendants by the FCC. Such a result is clearly irreconcilable with Congress' expressed intent that the FCC should exercise exclusive jurisdiction over regulating this subject matter.[7]

There are, as plaintiffs point out, cases which have sustained state court jurisdiction even though the court's action affected a field regulated by the FCC. *See Regents of the University System of Georgia v. Carroll,* 338 U.S. 586, 70 S.Ct. 370, 94

---

**6.** In a letter dated September 29, 1982, Daniel M. Armstrong, Associate General Counsel of the FCC, informed the district court that the FCC was taking the position that it had exclusive jurisdiction over "the dispute which has led to the present litigation," and that the FCC's Field Operations Bureau was investigating the alleged interference and the matter was to be submitted to the FCC for disposition sometime in early 1983. While this is not dispositive of the instant issue, it further supports our conclusion that the FCC intends to preempt this area. The United States Supreme Court has recently made clear that state law may be preempted by an agency's duly promulgated rules and regulations. *Capital Cities Cable, Inc. v. Crisp,* — U.S. —, —, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984) (held FCC regulations preempted application of Oklahoma's alcoholic beverages advertising ban to out-of-state signals carried by cable operators in Oklahoma, despite the Twenty-First Amendment of the United States Constitution).

**7.** In *Silkwood,* 104 S.Ct. at 626, the United States Supreme Court held that the Atomic Energy Act did not preempt an award of punitive damages arising out of the escape of plutonium from a federally licensed nuclear facility, even though the Nuclear Regulatory Commission (NRC) had exclusive regulatory authority over the safety aspects of nuclear development. The court rested its decision on Congress' expressed belief that it was not "inconsistent to vest the NRC with exclusive regulatory authority on the safety aspects of nuclear development while at the same time allowing plaintiffs * * * a recovery for injuries caused by nuclear hazards". *Id.* In contrast, we find that Congress here intended to preempt a state law nuisance action based upon alleged interference between radio stations.

L.Ed. 363 (1949) (state enforced a contract despite the fact that the FCC ordered the breaching party to repudiate the contract as a licensing condition); *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945) (upheld state authority to adjudicate common law fraud claims and to order restitution of physical assets of a station, even though the order may well have terminated a broadcasting station by separating the leased station property from the broadcast license); *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Association*, 294 N.W.2d 297 (Minn.1980) (upheld state court's authority to issue injunction to enforce contract right, even though it would prevent organization from broadcasting material which it had FCC license to broadcast). Those cases, however, are distinguishable because they rest on the FCC's lack of regulatory power over the subject matter at hand. For example, in *Minnesota-Iowa Television Co.*, this court noted that, even if the FCC disapproved of the contract at issue, it had no power to invalidate it. 294 N.W.2d at 305. In contrast, the instant nuisance claim involves subject matter within the exclusive regulatory jurisdiction of the FCC; namely, the regulation of interference between radio stations. To allow the instant state law nuisance claim would frustrate the scheme of the Federal Communications Act which grants the FCC exclusive jurisdiction over this subject matter. Accordingly, we hold that enforcement of the instant state law nuisance claim is barred by the Supremacy Clause of the United States Constitution.

2. In Count II of their amended complaint, plaintiffs alleged that they were third party beneficiaries of lease agreements entered into by defendants. Defendants have allegedly breached a lease provision requiring them to equip their transmitters with devices to minimize spurious radiation and emission. The trial court dismissed this cause of action, ruling that plaintiffs are merely incidental beneficiaries of the contracts in question and, therefore, they have no right to sue under those contracts. The trial court's ruling was correct under the guidelines set forth by this court in *Buchman Plumbing Co., Inc. v. Regents of the University of Minnesota*, 298 Minn. 328, 334–35, 215 N.W.2d 479, 483–84 (1974), to determine whether a party may sue as a third party beneficiary.

Affirmed.