IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## JAMIE FAUCON v. MICHAEL MGRIDICHIAN

**Appeal from the Circuit Court for Knox County**
**No. 145918   Gregory S. McMillan, Judge**

_____

**No. E2019-01343-COA-R3-CV**

_____

This case involves a violation of an ex parte order of protection. The order required the respondent to refrain from contacting the petitioner in any way, including electronic communication. The trial court found the respondent in criminal contempt for violating the order by contacting Petitioner over "amateur radio" on three separate occasions. Respondent appealed, asserting the trial court lacked jurisdiction over the case and that he did not receive sufficient notice of the criminal contempt charges. We affirm the trial court and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

John C. Barnes and Brandon Dallas Fersten, Knoxville, Tennessee, for the appellant, Michael Mgrdichian.[1]

Jamie Faucon, Knoxville, Tennessee, Pro Se.

## OPINION

### I.    FACTS & PROCEDURAL HISTORY

On April 30, 2019, Jamie Faucon ("Petitioner") filed a Petition for an Order of

_____

[1] Appellant's brief states that his last name has been misspelled since the inception of this case, which is reflected in the caption of this case. He states that the correct spelling of his surname is "Mgrdichian."

Protection against Michael J. Mgridichian ("Respondent") in the Fourth Circuit Court of Tennessee, sitting in Knox County. In the petition, Petitioner alleged Respondent stalked, threatened, and harassed Petitioner on multiple occasions from 2016 to April 2019. Petitioner claimed the threats took place over "HAMM radio" after Petitioner repeatedly asked Respondent to cease his actions. Petitioner claims Respondent's actions began after Petitioner filed a complaint with the Federal Communications Commission ("FCC") because Respondent was allegedly using "racially abusive language on the HAMM radio."

On the same day the petition was filed, the trial court issued a Temporary (Ex Parte) Order of Protection (the "ex parte order") pursuant to Tennessee Code Annotated section 36-3-605(a). The ex parte order detailed several actions that Respondent was to refrain from committing. The pertinent command for this appeal stated that Respondent would "not contact the petitioner either *directly or indirectly*, by phone, email, messages, mail, *or any other type of communication or contact*." (Emphasis added). The ex parte order included a notice for Respondent that included the following: "If you do not obey all orders on this form, you may be fined and sent to jail, for 10 days for each and every violation (criminal contempt of court)." Respondent received service of the ex parte order on May 7, 2019.

On May 13, 2019, Petitioner filed a motion for a show cause order based on an alleged violation of the ex parte order. In the motion, Petitioner alleged that on May 9, 2019, Petitioner was speaking with a third party on amateur radio when Respondent interjected into the conversation.[2] The motion included a fiat, which had a "checked" box that indicated Respondent was to appear and answer for the charges of criminal contempt of court. The same paragraph stated, "Each offense of criminal contempt proved beyond a reasonable doubt is punishable by ten (10) days in jail and/or a $50 fine." The fiat also included a "Notice to Respondent" that listed the notice requirements of Tennessee Rule of Criminal Procedure Rule 42(b). The trial court granted the motion and issued an Order to Show Cause on May 13, 2019. On May 28, 2019, Respondent was served with the order, the motion, and the fiat. The court's order to show cause included a caption that stated, "Show Cause Civil Action."

Petitioner filed a second motion for a show cause order on May 16, 2019. This motion was substantively identical to Petitioner's first motion—including: a fiat that indicated Respondent was to answer for charges of criminal contempt, the potential penalty for each count of criminal contempt, and Rule 42(b) notice. This motion listed two separate charges against Respondent.[3] In this motion, Petitioner alleged that

---

[2] "Amateur [radio] service" is defined as "[a] radiocommunication service for the purpose of self-training, intercommunication and technical investigations carried out by amateurs, that is, duly authorized persons interested in radio technique solely with a personal aim and without pecuniary interest." 47 C.F.R. § 97.3(a)(4) (2020).

[3] Appellant states in his brief that "it appears, the Trial Court did not learn that that there were

Respondent violated the ex parte order by again making contact on amateur radio on May 13 and May 15, 2019 and refusing to leave the frequency. The circuit court granted the motion. On May 23, 2019, Respondent was served with the order, the motion, and its accompanying fiat.[4] This order to show cause also included a caption titled, "Show Cause Civil Action."

On May 23, 2019, with the ex parte order still in effect, the trial court held a hearing on the initial petition for an order of protection. Both parties appeared pro se. With charges for criminal contempt of court pending against Respondent, at the outset of the hearing, the court advised Respondent of his Fifth Amendment rights related to the show cause orders, including the right to appointed representation and the right against self-incrimination. The court also stated that Respondent could be incarcerated for up to ten days and fined fifty dollars for each count of which he was found guilty. Respondent requested to continue with the hearing on the order of protection, and a hearing for the show cause orders was reset for July 2, 2019.[5] Petitioner could not offer sufficient proof on the underlying petition for an order of protection, so the petition was voluntarily dismissed at the May 23 hearing.

At the July 2, 2019 hearing on the show cause orders, both parties again appeared pro se.[6] The court informed Respondent of the potential penalties for each violation, that he is presumed innocent until proven guilty, that he cannot be compelled to testify, and that the charges against him must be proven beyond a reasonable doubt. Proof was heard on the show cause orders from May 13 and May 16, 2019. Subsequently, the trial court found Respondent committed three violations of the ex parte order and sentenced him to 30 days of incarceration. Bond was set at $7,500, pending an appeal. The trial court entered a written order on its ruling on July 2, 2019. Respondent timely appealed.

## II.  ISSUES PRESENTED

Respondent raises three issues on appeal, which we have reworded.

1. Whether the trial court's ex parte order is preempted by federal law that

---

three, rather than two, show causes against Appellant until *twelve (12) minutes into the hearing.*" Respectfully, from our review of the record, no such conclusion can be made.

[4] It is not apparent from the record why the show cause orders were served on Respondent in reverse chronological order.

[5] Initially, this hearing was set for July 18, 2019. It is not apparent from the record why it was rescheduled to July 2, 2019.

[6] At the hearing on May 23, 2019, Respondent stated he could not afford an attorney, and the trial court instructed him to fill out an income and expense affidavit to determine if he qualified for an appointed attorney. It appears an affidavit was never submitted or submitted incorrectly. At the hearing on July 2, 2019, the trial stated, "I believe I [declined to appoint counsel] because of the failure to complete the affidavit correctly."

regulates the use of amateur radio;

2. Whether Respondent was given sufficient notice under Tennessee Rule of Criminal Procedure 42(b) that he was facing criminal contempt charges; and

3. Whether the trial court erred in finding Respondent guilty of three counts of criminal contempt when it issued only two show cause orders.

For the reasons stated herein, we affirm the trial court and remand.

### III. STANDARD OF REVIEW

The Supreme Court has previously detailed the standard of review in criminal contempt cases.

> A person charged with criminal contempt is presumed innocent, and guilt must be proven beyond a reasonable doubt. Once convicted, however, the contemnor loses the presumption of innocence and bears the burden of overcoming the presumption of guilt on appeal. Thus, appellate courts do not review the evidence in a light favorable to the accused. A conviction will be reversed for insufficient evidence only when the facts in the record, and any inferences that may be drawn therefrom, are insufficient as a matter of law for a rational trier of fact to find the accused guilty of the crime beyond a reasonable doubt.

*State v. Beeler*, 387 S.W.3d 511, 519 (Tenn. 2012) (citations omitted). A trial court's conclusions on questions of law are reviewed de novo, without any presumption of correctness. *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013).

### IV. DISCUSSION

On appeal and throughout the entirety of this case, Petitioner has acted pro se.

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62–63 (Tenn. Ct. App. 2003) (citations omitted).

### *A. Federal Preemption*

Respondent attempted to have this case dismissed at the initial hearing on May 23, 2019, by arguing the trial court did not have jurisdiction. He argued that state courts do not have jurisdiction over *any* communication involving amateur radio. The trial court stated it did have jurisdiction based on an alleged violation of the ex parte order, but the court also stated, at the next hearing on the show cause orders, "[Respondent] may mount whatever defense [he] wish[es] to mount . . . . That may include some sort of federal preemption." Despite this statement by the court, Respondent did not raise this preemption argument at the July 2 hearing. However, Respondent did raise the issue in this appeal, claiming state courts lack jurisdiction over cases involving the use of amateur radio.

Although Respondent did not reassert his preemption argument at the July 2, 2019 hearing, the issue involves a question of subject matter jurisdiction, which cannot be waived. *See Johnson v. Hopkins*, 432 S.W.3d 840, 843–44 (Tenn. 2013) (citing *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012); *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996)). Therefore, it is immaterial whether Respondent reasserted the defense at the July 2 hearing. It may be raised and considered in this appeal. Whether an action of a state court is preempted by federal law is reviewed de novo. *Giggers v. Memphis Hous. Auth.*, 363 S.W.3d 500, 504–05 (Tenn. 2012) (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010)).

"Preemption can arise either in the form of explicit legislation by Congress or when federal legislation implicitly conflicts with state law." *Id.* at 504 (citing *Leggett*, 308 S.W.3d at 853). An implicit conflict may arise when "the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *LeTellier v. LeTellier*, 40 S.W.3d 490, 497 (Tenn. 2001) (quoting *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 542 (Tenn. 1989)). Therefore, "[t]he purpose of Congress in enacting a federal law is . . . the 'ultimate touchstone' of preemption analysis." *Id.* (quoting *Riggs v. Burson*, 941 S.W.2d 44, 49 (Tenn. 1997)). Given the subject matter of this case, it is important to note that "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984).

Respondent cites federal codes, Tennessee statutes, and cases from neighboring states to support his argument that federal law preempts a state court from having jurisdiction in a case involving amateur radio. While the cited sources involve the use or regulation of amateur radio, we do not find such broad-ranging preemption in this case.

Congress has empowered the Federal Communications Commission ("FCC") with regulating interstate and foreign radio communication. *See* 47 U.S.C. § 151. In regulating amateur radio, the FCC's purposes include: enhancing the value of amateur

radio; enhancing its ability to contribute to radio as an art; encouraging and improving the use of amateur radio; expanding the use of amateur radio; and continuing the use of amateur radio to "enhance international goodwill." *See* 47 C.F.R. § 97.1. At the outset, it does not appear any of these purposes conflict with a court imposing sanctions for criminal contempt, which are to "vindicate [a] court's authority." *See Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006) (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)).

Respondent cites Tennessee Code Annotated section 6-54-130 for the proposition that the Tennessee legislature recognizes the FCC has exclusive jurisdiction over any case involving amateur radio. This section of Code states that municipal or county ordinances are unenforceable if they do not comply with the FCC's memorandum opinion *In the Matter of Federal preemption of state and local regulations pertaining to Amateur radio facilities* ("*In the Matter of Federal preemption*"), 101 F.C.C.2d 952 (1985), or title 47, part 97 of the Code of Federal Regulations. Tenn. Code Ann. § 6-54-130(a). As we will address in greater detail below, we cannot see how the enforcement of the ex parte order against Respondent fails to comply with any provision listed in title 47, part 97 of the Code of Federal Regulations. In regard to *In the Matter of Federal preemption*, the opinion discusses permitted zoning regulations related to the height of radio antennas. *See In the Matter of Federal preemption*, 101 F.C.C.2d at 959–60. The opinion sought to further the operation of amateur radio by ensuring federal regulation on antenna sizes was followed by states. *Id.* It concludes, "local regulations which involve placement, screening, or height of antennas . . . must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose." *Id.* at 960. We cannot say the regulation of radio antennas and the promotion of amateur radio, as the opinion states, leads to the conclusion that the FCC wields the broad-sweeping preemption power that Respondent suggests. *In the Matter of Federal preemption* and Tennessee Code Annotated section 6-54-130 appear to focus on the size of radio antennas, a subject unrelated to the outcome of this case.

Many of the other authorities cited by Respondent prohibit *interference* with amateur radio communications. Title 47, section 333 of the United States Code states "No person shall willfully or maliciously *interfere* with or cause *interference to any radio communications*." (Emphasis added). Additionally, the Code of Federal Regulations states, "[n]o amateur operator shall willfully or maliciously interfere with or cause *interference to any radio communication or signal*." 47 C.F.R. § 97.101(d) (emphasis added). The FCC also prohibits amateur stations that transmit "communications intended to facilitate a criminal act; [or] . . . obscene or indecent words or language." 47 C.F.R. § 97.113(a)(4).

In this case, the trial court found Respondent in criminal contempt for violating the ex parte order by communicating with Petitioner on amateur radio. Under the order,

Respondent was "not to contact [Petitioner] either directly or indirectly," by any type of communication. While Respondent's comments to Petitioner on the radio were less than pleasant, his obscenities are not what the trial court found to be a violation. It was Respondent merely speaking with Petitioner that made the acts violations of the ex parte order.

Federal remedies and penalties for violating the regulations described herein are not exclusive. Penalties for violating federal amateur radio standards are "*in addition to* any other penalties provided by law." 47 U.S.C. § 502 (emphasis added). Similarly, the remedies available to a party under title 47 of the U.S. Code "shall [not] in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are *in addition to such remedies*." 47 U.S.C. § 414 (emphasis added). Again, we find no conflict with the purposes of amateur radio and the enforcement of criminal contempt. *See* 47 C.F.R. § 97.101; *Long*, 221 S.W.3d at 12. Instead, we find that these provisions allow a court to find a party in criminal contempt for violating a valid court order.

As part of his preemption argument, Respondent also places significant weight on cases from our sister states. We find these cases to be inapplicable to the present case.

In *Blackburn v. Doubleday Broad. Co.*, the plaintiffs sued five local radio stations under a *nuisance* claim for interfering with their reception of other radio transmissions. 353 N.W.2d 550, 551–52 (Minn. 1984). The Minnesota court dismissed the nuisance claim for lack of subject matter jurisdiction, finding federal law preempted the claim. *Id.* at 551, 556. The court stated, "the gravamen of plaintiffs' complaint is that defendants' signals prevent them from clearly receiving other desired signals. Hence, we conclude that plaintiffs are alleging 'interference' within the meaning of the Federal Communications Act." *Id.* at 553. The court found it lacked subject matter jurisdiction by Congress exercising "exclusive jurisdiction over regulating *interference* between radio station signals." *Id.* at 556 (emphasis added). Even after considering the "additional remedies" language in title 47, section 414 of the United States Code, the *Blackburn* court concluded the nuisance claim was barred by the extensive statutory scheme. *Id.* at 555–56. However, the case did not involve a valid order that was violated resulting in criminal contempt. Instead, the plaintiffs' nuisance claim was based on the defendants' disruption of their other radio signals, which is heavily regulated by the FCC. *Id.* at 556.

Subsequent cases in state courts that involved nuisance claims relied on *Blackburn* to make similar findings. *See Still v. Michaels*, 803 P.2d 124, 125 (Ariz. Ct. App. 1990); *Smith v. Calvary Educ. Broad. Network*, 783 S.W.2d 533, 534–35 (Mo. Ct. App. 1990) (stating "interference caused by radio transmission is similarly a technical matter and that the FCC's control thereof is exclusive"). Of these cases, Respondent relies most heavily on *Helm v. Louisville Two-Way Radio Corp.*, 667 S.W.2d 691 (Ky. 1984).

*Helm v. Louisville Two-Way Radio Corp.* also involved a nuisance claim filed against a commercial radio broadcast company. *Id.* at 691–92. Like its predecessor cases in neighboring states, the court in *Helm* dismissed the state law claim for lack of jurisdiction. *Id.* at 692. In doing so, the *Helm* court rejected cases that upheld jurisdiction for a state court. *Id.* at 692–93. Much like the holdings in *Blackburn*, 353 N.W.2d at 556; *Still*, 803 P.2d at 125; and *Smith*, 783 S.W.2d at 534–35, the *Helm* court rejected the nuisance claim that alleged radio interference. *Helm*, 667 S.W.2d at 693. The court stated, the exclusive and comprehensive power of the FCC "[t]o control, regulate, or prohibit radio transmissions" preempted the state law nuisance claim. *Id.*

Unlike these prior cases, the present case does not require a court to determine "technical matters" such as the appropriate level of radio interference. The ex parte order did not prohibit Respondent from using amateur radio; it did not attempt to establish a permitted level of interference; and it did not originate from or result in a nuisance claim. Instead, the subject matter of this case primarily rests on Respondent violating the ex parte order by contacting Petitioner on amateur radio. A party's radio usage—whether it be commercial or amateur—does not automatically preempt the case from being heard by a state court. *See, e.g.*, *Head v. N.M. Bd. of Examiners in Optometry*, 374 U.S. 424, 429–32 (1963) (holding state regulation of radio advertising was not preempted by the FCC); *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 121–22, 132 (1945) (holding the state court had jurisdiction to determine a fraud claim involving a lease of a radio station); *Menefee v. State*, 980 So.2d 569, 570–71 (Fla. Dist. Ct. App. 2008) (holding state courts are not preempted from prosecuting harassing or threatening statements over amateur radio).

Again, the enforcement and prosecution of a valid ex parte order does not conflict with the federal statutes regulating radio activity. As the Florida appellate court aptly noted under similar circumstances, "In prosecuting [Respondent] the [trial court] was not seeking to regulate the air waves, rather it was seeking to punish him for his criminal conduct." *Menefee*, 980 So.2d at 571. Respondent argues that the FCC's prohibition against "communications intended to facilitate a criminal act; . . . [or] obscene or indecent words or language" restricts any state court from having jurisdiction to prosecute such actions. *See* 47 C.F.R. § 97.113(a)(4). We disagree with this conclusory assumption. Respondent was not found in criminal contempt for using "obscene or indecent words" on amateur radio. Rather, he was found in contempt for simply communicating with Petitioner, irrespective of the language he used. On this issue, we rely on analysis in *Menefee*, 980 So.2d at 573–74. In *Menefee*, the Florida District Court of Appeals stated, "there is nothing contained within the [Federal Communications] Act or its implementing regulations that suggests that states may not take action to charge a[n] [amateur] radio operator criminally for *conduct* that would constitute a crime." *Id.* at 573.

For these reasons, we find that the trial court's ex parte order is not preempted by

federal law. Therefore, the trial court had jurisdiction to find Respondent in criminal contempt of court when Respondent violated the ex parte order by contacting Petitioner on amateur radio.

### B. Rule 42(b) Notice

We now turn our attention to whether Respondent received sufficient notice of the contempt charges that were brought against him. Respondent takes issue with how he was informed of the criminal contempt charges and with two show cause orders being issued for three counts of criminal contempt. While Respondent listed these as separate issues, we shall address them collectively.

"A charge of criminal contempt is somewhat peculiar because such a charge encompasses aspects of both criminal law and civil law." *Moody v. Hutchison*, 159 S.W.3d 15, 27 (Tenn. Ct. App. 2004). "An act of contempt may be either civil or criminal in nature, and determining whether a punishment for contempt is civil or criminal depends on the character and the purpose of the sanction imposed." *McPherson v. McPherson*, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at *3 (Tenn. Ct. App. Dec. 19, 2005) (citations omitted). As we have previously stated, "[s]anctions for criminal contempt are punitive in character, and their primary purpose is to vindicate the court's authority." *Long*, 221 S.W.3d at 12 (citing *Doe*, 104 S.W.3d at 474; *Black*, 938 S.W.2d at 398). Unlike civil contempt, criminal contempt is not meant to compel compliance with a court order. *Id.* at 12–13; *McPherson*, 2005 WL 3479630, at *4.

Although criminal contempt is "not enough of a crime" to require that a party receives all of the constitutional protections afforded to a criminal defendant (such as a trial by jury or formal indictment), certain safeguards must be observed. *Moody*, 159 S.W.3d at 27 (citing *State v. Wood*, 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002)). Unless the contemptuous action occurs in the presence of the court, proper notice of the alleged contempt is one of those required safeguards. *See Long*, 221 S.W.3d at 13; *Moody*, 159 S.W.3d at 27. Rule 42(b) of the Tennessee Rules of Criminal Procedure, details the notice required, stating:

> (b) Disposition on Notice and Hearing. A criminal contempt shall be initiated on notice, except as provided in subdivision (a) of this rule.
>   (1) Content of Notice. The criminal contempt notice shall:
>       (A) state the time and place of the hearing;
>       (B) allow the alleged contemner a reasonable time to prepare a defense; and
>       (C) state the essential facts constituting the criminal contempt charged and describe it as such.
>   (2) Form of Notice. The judge shall give the notice orally in open court in the presence of the alleged contemner or by written

order, including an arrest order if warranted.

Tenn. R. Crim. P. 42(b).

Respondent does not appear to argue that the notice he received failed to comply with the requirements of Rule 42(b)(1)(A) or (B). Therefore, we shall not address those requirements as they are applied in this case. Rule 42(b)(1)(C) states the content of notice in a criminal contempt case must "state the essential facts constituting the criminal contempt charged and describe it as such." Tenn. R. Crim. P. 42(b)(1)(C). Notice may be given by a judge orally in open court with the contemner present or by written order. Tenn. R. Crim. P. 42(b)(2). The "essential facts" to be included must: "(1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment . . ., and (3) sufficiently aid the accused to determine the nature of the accusation." *Long*, 221 S.W. 3d at 13–14. "Because the same conduct can constitute both civil contempt and criminal contempt and because both contempt proceedings may carry with them the possibility of incarceration, it is imperative that notice specifically charge a party with criminal contempt." *Id.* at 13 (citing *Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029, at *3–4 (Tenn. Ct. App. Feb. 26, 1997)). As a general principle, "every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether it was instituted for private litigation or for public prosecution." *Moody*, 159 S.W.3d at 27 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 446 (1911)).

In this case, both of Petitioner's motions for a show cause order included statements of facts that detailed the alleged events giving rise to the motions. The second motion listed two distinct events as separate violations of the ex parte order. Each motion was accompanied by a fiat, issued by the clerk of the court. The trial court granted both motions, and Respondent was served with the two show cause orders and their accompanying motions.

Even as a lay person, there were several instances that should have put Respondent on notice that he faced criminal contempt charges, which may result in being incarcerated. Served near the inception of this case, the ex parte order itself states, "If [Respondent] do[es] not obey all orders on this form, [he] may be fined and sent to jail, for 10 days for each and every violation (criminal contempt of court)." The fiats that accompanied Petitioner's show cause motions included many of the notice requirements. Substantively, other than the dates they were issued, the fiats were identical. Both had a "checked box" for criminal contempt followed by the statement, "Each offense of criminal contempt proved beyond a reasonable doubt is punishable by ten (10) days in jail and/or a $50 fine." Both fiats also contained a section titled "Notice to Respondent" that detailed the notice requirements of Rule 42(b). The "Notice to Respondent" section also included a notice detailing Respondent's right to counsel and how to obtain a court-

- 10 -

appointed attorney if he could not afford one. Along with Petitioner's motions and the accompanying fiats, Respondent was served with the trial court's orders to show cause on May 23 and May 28, 2019. Neither order included the label "criminal contempt" in any caption or direction. Instead, both orders directed Respondent to the attached fiats for him to show cause, if any, on why he should not be found in contempt.

At the initial hearing on May 23, 2019, the trial court advised Respondent of his right to counsel and his right against self-incrimination. The court repeated these rights at the show cause hearing on July 2, 2019. At the later hearing, the court ensured Respondent was aware that Petitioner must prove his allegations beyond a reasonable doubt, "the criminal burden of proof;" and that Respondent is presumed innocent until proven guilty. At both hearings, the court also ensured Respondent was aware that he could be incarcerated for up to ten days and fined $50 for each violation Petitioner proves beyond a reasonable doubt.

After a careful review of the record, we find Respondent received adequate notice that he was being charged with criminal contempt. Both motions, the accompanying fiats, and the court's oral statements on May 23, 2019 and July 2, 2019 provided Respondent with the "essential facts" required under Rule 42(b). *See Long*, 221 S.W.3d at 13–14. The fiats and the court's statements sufficiently indicated the charges involved possible incarceration as a punitive measure. *See id.* at 12; *McPherson*, 2005 WL 3479630, at *4. Neither the pleadings, the fiats, nor the court's statements stated that Respondent would be "freed" from incarceration by compliance with the ex parte order. *See Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000) (stating "a party who is in criminal contempt cannot be freed by eventual compliance"). On these facts, even a citizen who is "unlearned in the law" would understand the proceedings to be "for public prosecution" rather than "private litigation." *Moody*, 159 S.W.3d at 27 (quoting *Gompers*, 221 U.S. at 446).[7]

Unlike the contempt petitions in *Storey v. Storey*, 835 S.W.2d 593, 600 (Tenn. Ct. App. 1992), where there was no designation that the contempt was criminal, here, the fiats clearly marked criminal contempt. In *McPherson v. McPherson*, the criminal contempt charge was vacated for insufficient notice, in part, because the accused was not informed of certain Fifth Amendment privileges. *See McPherson*, 2005 WL 3479630, at *5. The same cannot be said in this case. Similar cases where contempt charges were dismissed on appeal are likewise off-base.

In *Brown v. Batey*, No. M2009-02020-COA-R3-JV, 2010 WL 3155189 (Tenn. Ct.

---

[7] We acknowledge that both show cause orders included a caption that stated, "Show Cause Civil Action." The caption was apparently in reference to the fact that this was a criminal contempt proceeding arising out of a civil action. Given the clarity of notice given to Respondent elsewhere, we cannot say Respondent received insufficient notice that he faced criminal contempt charges.

App. Aug. 9, 2010), a father was found in criminal contempt for failing to make child support payments. *Id.* at *1. On appeal, this Court vacated the charges due to a lack of notice that clearly indicated the dates of the alleged acts or the number of charges the father faced. *Id.* at *5–6. In the present case, Petitioner's motions clearly indicated the alleged events occurred on May 9, 13, and 15, 2019, as three separate charges.

Respondent also cites *McLean v. McLean*, No. E2008-02796-COA-R3-CV, 2010 WL 2160752 (Tenn. Ct. App. May 28, 2010), in support of vacating the criminal contempt charges. In *McLean*, the accused was unaware she faced possible incarceration until after a hearing had already commenced. *Id.* at *2, *5–6. On appeal, this Court found the party was given inadequate notice that she faced possible incarceration, stating "Penalties for criminal contempt cannot be imposed on someone who has not been afforded the protections that the state and federal constitutions require in criminal proceedings." *Id.* at *6. In contrast, in the present case, Respondent received these protections and notices on several occasions, in written and oral form, before the contempt proceedings commenced.

*McClain v. McClain*, 539 S.W.3d 170 (Tenn. Ct. App. 2017), also presents differing facts. The motion for contempt in *McClain* did not list separate charges for criminal contempt, did not "specify which type of contempt" was being charged, and "appeared to confuse civil and criminal contempt throughout the motion." *Id.* at 220–21. The trial court also failed to provided oral notice that the accused faced potential jail time. *Id.* at 221. As we have discussed at length, these notices were given in the present case in both oral and written form.

We find the facts of this case to be more inline with *Jarrell v. Jarrell*, No. W2011-00578-COA-R3-CV, 2012 WL 1066398 (Tenn. Ct. App. Mar. 28, 2012), and *In re C.C.S.*, No. M2007-00842-COA-R3-JV, 2008 WL 5204428 (Tenn. Ct. App. Dec. 11, 2008). In *Jarrell*, a fiat accompanied the petition for contempt. *Jarrell*, 2012 WL 1066398, at *8. Between the petition and the fiat, the accused was informed of the rights she would be afforded; the time and place of the contempt hearing; the possibility of incarceration; and "the essential facts of the charge." *Id.* As a result, this Court found the accused received sufficient notice under Tennessee Rule of Criminal Procedure 42(b). *Id.* The mother in *In re C.C.S.* also received sufficient notice of criminal contempt charges "[e]ven though the contempt was classified as criminal *only once.*" *In re C.C.S.*, 2008 WL 5204428, at *6 (emphasis added). The designation of criminal contempt combined with written notice that the mother "[could] be jailed for 10 days for any violations, . . . could only mean that any finding of contempt pursuant to that section would be criminal." *Id.* As a result, this Court found mother was given proper notice of contempt proceedings. *Id.* at *5.

Like the parties in *Jarrell* and *In re C.C.S.*, Respondent received sufficient notice under Rule 42(b). Petitioner's motions, the fiats, and the oral statements of the trial court

provided Respondent with both oral and written notice of the criminal contempt charges. Such notice met the requirements of Tennessee Rule of Criminal Procedure 42(b) and its accompanying case law. Further, Respondent received written and oral warnings that he could face up to ten days of incarceration for *each offense*, and Petitioner's motions listed *three* separate events on different dates as alleged violations. Petitioner's motions clearly dated and described *three* alleged instances of contempt with distinguishable facts. Therefore, we find that Respondent received sufficient notice that he faced a potential of 30 days of incarceration.

Based on the foregoing discussion, we find Respondent received proper notice for three counts of criminal contempt for violating the ex parte order. With no issue being raised by Respondent as to the trial court's factual findings, we affirm Respondent's sentence of 30 days of incarceration for his three violations of said order.

## V.    CONCLUSION

Federal law does not preempt the subject matter of this case. Meaning, the trial court had the authority to issue and rule on the ex parte order and any violations thereof. Additionally, Respondent had sufficient notice that he faced three separate charges for criminal contempt. We affirm the trial court and remand for further proceedings as may be necessary. Costs of this appeal are taxed to appellant, Michael Mgridichian, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

- 13 -